UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA,<br>Secretary of Labor,<br>United States Department of Labor,<br><br>Plaintiff,<br><br>v.<br><br>ZANDER GROUP HOLDINGS, INC.;<br>JEFFREY J. ZANDER, an individual;<br>STEPHEN M. THOMPSON, an individual; and<br>ZANDER GROUP HOLDINGS, INC.<br>EMPLOYEE STOCK OWNERSHIP PLAN,<br><br>Defendants. | Civil Action<br><br>No. _____<br><br><br><br><br><br>**COMPLAINT**<br>**Injunctive Relief Sought** |

# INTRODUCTION

1. The Secretary is charged with enforcing the provisions of Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001 et seq. ERISA provides that a person who "exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets" or "has any discretionary authority or discretionary responsibility in the administration of such plan" is a "fiduciary" to such plan. Under ERISA, fiduciaries must act in accord with certain prescribed duties and abstain from certain prohibited conduct. ERISA §§ 3(21)(A); 404; 406, 29 U.S.C. §§ 1002(21)(A), 1104, 1106.

1

2. Fiduciaries must also discharge their duties in accordance with the documents and instruments governing the plan, insofar as such documents and instruments are consistent with ERISA's other fiduciary provisions. ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D).

3. Title I of ERISA contains *per se* prohibitions that bar conflict of interest transactions between a plan and a party in interest. ERISA §§ 406-408, 29 U.S.C. §§ 1106-1108. Congress concluded that certain transactions present such grave opportunities for abuse that, except in narrowly-defined circumstances, they should be prohibited. Thus, subject to certain narrow exceptions, ERISA prohibits a fiduciary from causing a plan to engage in the sale or exchange of property between a plan and a party in interest, ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A); from lending money or extending credit between a plan and a party in interest, ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B); and from acquiring employer securities on behalf of a plan, ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E). ERISA also prohibits a fiduciary from acting in any transaction involving a plan, or on behalf of a party whose interests are adverse to the interests of a plan, in his individual or any other capacity. ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2).

4. An exception to the prohibitions of ERISA § 406(a)(1), 29 U.S.C. § 1106(a)(1) is found in ERISA § 408(e), 29 U.S.C. § 1108(e). The exception provides that the prohibitions set forth in § 406(a)(1) shall not apply to transactions in which an employee benefit plan purchases the employer's stock, so long as the purchase is for "adequate consideration." 29 U.S.C. 1108(e). ERISA § 3(18)(B) defines "adequate consideration" in the case of a closely held corporation as "the fair market value of the asset as determined in good faith by the trustee." 29 U.S.C. § 1002(18)(B). Accordingly, if the initial stock purchase is not for "fair market value" or the value is not determined by the fiduciary "in good faith," the transaction in which an employee

2

Case 3:17-cv-01187   Document 1   Filed 08/23/17   Page 2 of 18 PageID #: 2

benefit plan purchases employer stock is prohibited from its inception, as a non-exempt sale of property between a plan and a party in interest. ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A). Once the exception is removed, the other transactions encompassed within the sale, such as the loan between the plan and a party in interest and the plan's acquisition of employer securities, become prohibited. 29 U.S.C. §§ 1106(a)(1)(B), 1106(a)(1)(E).

5. Fiduciaries are directly responsible to a plan for the losses and for other relief. ERISA § 409, 29 U.S.C. § 1109. In addition, co-fiduciaries may also be held liable when the co-fiduciaries participate in, enable, or fail to remedy the breach of another fiduciary. ERISA §§ 405(a)(1)-(3), 29 U.S.C. §§ 1105(a)(1)-(3).

6. When ERISA's strict fiduciary standards are not met, the Secretary has the authority to seek relief under ERISA §§ 409(a) and 502(a)(2) & (5), 29 U.S.C. §§ 1109(a) and 1132(a)(2) & (5), to restore plan losses, to recover unjust profits, and to obtain other remedial and equitable relief as the court may deem appropriate. The Secretary may also seek injunctions to prevent those who have violated their fiduciary duties from managing or providing services to employee benefit plans in the future.

7. ERISA also provides that non-fiduciaries who knowingly participate in a fiduciary's breach are subject to equitable remedies. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3).

8. Zander Insurance (the "Business") is a partnership owned by two trusts. Prior to the establishment of the Zander Group Holdings, Inc. Employee Stock Ownership Plan (the "ESOP" or the "Plan"), the Business was owned by two trusts and a Tennessee corporation, JJZ Insurance Agency, Inc. Jeffrey J. Zander was the trustee and the beneficiary to both of the trusts. He was the president of JJZ Insurance Agency, Inc. Zander Group Holdings, Inc. (the "Company") was created on July 7, 2011, for the purpose of establishing the ESOP. On

September 1, 2011, Jeffrey J. Zander was employed as president of the Company. In that capacity and as trustee of the Toxaway Trust, Zander caused the Toxaway Trust to sell its shares of the Company to employees who were leased to the Company from the Business, thereby establishing the ESOP. To finance the purchase, the ESOP obtained a loan from the Company. This transaction will be called the "Stock Purchase," herein. On the date of the Stock Purchase, ZGH had a 49% ownership interest in the Business. The other 51% was retained by the two trusts, of which Jeffrey J. Zander was both trustee and beneficiary.

9. The employees paid much more than the shares were worth. Jeffrey Zander retained 2nd Generation Capital, LLC ("2nd Gen.") prepare a valuation report and Stephen M. Thompson (the "Trustee") to represent the ESOP for purposes of negotiating the price of the Stock Purchase. After retaining 2nd Gen., Zander influenced 2nd Gen.'s findings and the Trustee caused the employees to overpay for the Company's shares as a result of his failure to meaningfully review the valuation report or engage in an arms-length negotiation prior to agreeing to the Stock Purchase. Zander actively influenced 2nd Gen.'s conclusion as to value by proffering methodologies through which 2nd Gen could reason to a higher value and by repeatedly stating his desire to obtain a higher conclusion as to value. 2nd Gen. was receptive to Zander's influence and incorporated several of his suggestions. The Trustee failed to ensure that the financial information provided to 2nd Gen. and used in its valuation was accurate, up-to-date, unbiased, uncorrupted, and complete. The Trustee also failed to thoroughly understand the appraiser's valuation and to meaningfully question the valuation's underlying assumptions. As a result of the Trustee's neglect and Zander's influence over the appraisal process, the conclusion of value did not reflect the "fair market value" of the Company and the ESOP overpaid when it purchased shares in the Company, thereby causing losses to the ESOP.

## JURISDICTION AND VENUE

10. This Court has jurisdiction over this action pursuant to ERISA § 502(e)(1), 29 U.S.C. § 1132(e)(1).

11. Venue with respect to this action lies in the United States District Court for the Middle District of Tennessee, Nashville Division, pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2).

## PARTIES

12. The Plaintiff Secretary is vested with the authority to enforce the provisions of Title I of ERISA by, among other means, filing and prosecuting claims against fiduciaries and other parties who commit violations of ERISA. ERISA §§ 502(a)(2) and (5), 29 U.S.C. §§ 1132(a)(2) and (5).

13. The Business, of which the Company is a part, sells insurance products to businesses and individuals. Its principal office is in Nashville, Tennessee. Prior to the formation of the ESOP, the Business was owned by two trusts, the Cardinal Trust and the Toxaway Trust, as well as JJZ Insurance Agency, Inc. Jeffrey J. Zander was both trustee and beneficiary to the two trusts. He was president of JJZ Insurance Agency, Inc.

14. The Company was formed on July 7, 2011. Its principal address is in Nashville, Tennessee and it is in the business of selling insurance products to businesses and individuals. The Plan documents name the Company as the Employer and Plan Sponsor. Prior to the formation of the ESOP, the Toxaway Trust held 100% of the shares of the Company.

15. The Company established the ESOP on September 1, 2011 and, on that same date, Jeffrey J. Zander was named as president of the Company. In that capacity and as trustee of the Toxaway Trust, Zander caused the Toxaway Trust to sell its shares of the Company to

5

employees who were leased to the Company from the Business, thereby establishing the ESOP. To finance the purchase, the ESOP obtained a loan from the Company.

16. Within the ESOP's plan documents, the Company is named as the Employer and Plan Sponsor. The Company, through its president Jeffrey J. Zander, acted to administer the Plan. The Company is thus a functional fiduciary to the Plan, within the meaning of ERISA §§ 3(21)(a) and 402(a), 29 U.S.C. § 1002(21)(a) and 1102(a), and a "party in interest" within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

17. Jeffrey J. Zander is the president of the Company, the president of JJZ Insurance Agency, Inc., and both trustee and beneficiary to the two trusts holding an ownership interest in the Business. In his capacities as trustee and beneficiary of the Toxaway Trust and as president of the Company, Zander acted as seller to the ESOP. Zander engaged 2nd Gen., to perform a valuation of the Business for the purposes of establishing an ESOP. Zander actively influenced the valuation process and affected the resulting conclusion of value. Zander retained Stephen M. Thompson to act as Trustee to the ESOP. Accordingly, Jeffrey J. Zander acted as both fiduciary to the Plan, within the meaning of ERISA §§ 3(21)(a) and 402(a), 29 U.S.C. § 1002(21)(a) and 1102(a) and as a knowing participant in Thompson's breaches of his fiduciary duties. As a fiduciary to the ESOP, trustee and beneficiary of the selling shareholder, and president of the Company, he is also a "party in interest" within the meaning of ERISA § 3(14), 29 U.S.C. § 1002(14).

18. Stephen M. Thompson was hired by Zander to serve as the discretionary trustee to the ESOP. The Trustee contracted with Zander, in Zander's capacity as trustee to the Toxaway Trust and president of the Company, to acquire the Company's stock from Toxaway Trust for the ESOP. ERISA and the Plan's governing documents required the Trustee to pay a price which

6

did not exceed fair market value for these assets. Accordingly, at all relevant times, the Trustee is and has been a fiduciary to the ESOP, within the meaning of §§ 3(21)(a) and 402(a) of ERISA, 29 U.S.C. §§ 1002(21)(a) and 1102(a).

19. The ESOP is an employee pension benefit plan as defined in ERISA § 3(2), 29 U.S.C. § 1002(2). It is located in Nashville, Tennessee. The ESOP is named as a defendant herein pursuant to Rule 19(a) of the Federal Rules of Civil Procedure, solely to ensure that complete relief can be granted.

## GENERAL ALLEGATIONS

20. Defendant Zander Group Holdings, Inc. (the "Company") is a Tennessee Corporation formed on July 7, 2011. Its principal address is in Nashville, Tennessee. It is in the business of selling insurance products to businesses and individuals. The Plan documents name the Company as the Employer and Plan Sponsor. The Company purported to perform its functions as Administrator functions through an ESOP Committee. However, it does not appear that the ESOP Committee undertook to act on behalf of the Plan and that, instead, the Company acted to administer the Plan through its president Jeffrey J. Zander. The Company is thus a functional fiduciary to the Plan, within the meaning of ERISA §§ 3(21)(a) and 402(a), 29 U.S.C. § 1002(21)(a) and 1102(a). As an employer whose employees are covered by the Plan, it is also a party in interest, within the meaning of ERISA § 3(14)(B), 29 U.S.C. § 1002(14)(B).

21. On or about December of 2010, Zander engaged 2nd Gen. to perform a valuation of the Business. 2nd Gen. was engaged to prepare a valuation report stating its conclusion as to value and explaining the methodology by which it reached that conclusion (the "Valuation Report"). The initial engagement occurred prior to the date upon which the Company was formed, prior to the date upon which the Company engaged the Trustee and, thus, prior to the

date upon which the Company empowered the trustee to engage a valuation advisor. Zander actively influenced the valuation and the resulting Valuation Report. Prior to the Stock Purchase Agreement, Zander retained Stephen M. Thompson to act as Trustee to the ESOP. This engagement also occurred prior to the date upon which the Company was formed and prior to the date upon which the Company empowered Zander to engage the Trustee. Accordingly, Jeffrey J. Zander acted as fiduciary to the Plan, within the meaning of ERISA §§ 3(21)(a) and 402(a), 29 U.S.C. § 1002(21)(a) and 1102(a) and as a knowing participant in Thompson's fiduciary breaches. Zander was also a party in interest with respect to the Plan at all relevant times, within the meaning of ERISA §§ 3(14)(A), 29 U.S.C. §§ 1002(14), in that he acted as a fiduciary to the Plan; was the trustee and beneficiary to the trusts which held a 51% interest in the Business, in which the ESOP held a 49% interest; was an officer of an employer whose employees were covered by the plan.

22. On May 5, 2011, 2nd Gen. prepared a preliminary valuation report. The preliminary report, dated May 1, 2011, appears to conclude that the fair market value of the Business is $74,000,000. The final Valuation Report, also dated May 1, 2011, concludes that the Business' fair market value was $75,000,000.

23. On or about May 22, 2011, Zander formally retained Thompson to act as Trustee to the ESOP.

24. On or about May 28, 2011, 2nd Gen. sought to obtain documentation of the numbers Zander had provided to support the conclusion of value presented within the May 1, 2011 Valuation Report. Instead, Zander provided 2nd Gen. with a "representation letter" in which Zander stipulated to the numbers previously provided.

25. On July 7, 2011, the Company was established.

8

26. On August 31, 2011, Zander again retained Thompson to act as Trustee to the ESOP. While the engagement agreement represents that Zander was acting in his role as president of the newly created Company, he was not named as such until the following day. The engagement letter provided that the Plan intended to acquire 500,000 "common shares of the Company from the Toxaway Trust … at an offer price of $35,350,000." The engagement letter provides that in order to facilitate this transaction the Trustee was to "engage the services of 2nd Generation Capital, LLC to serve as its independent appraiser." The letter also provides that the Trustee was to evaluate the forthcoming purchase offer on behalf of the Plan and that, in performing his evaluation, the Trustee should "conduct extensive due diligence of the Company," said diligence to include "requesting certain key legal documents of the Company, and conducting an analysis of the same," as well as "reviewing the management's financial projections," "analysis and review of the appraiser's conclusions regarding the reasonableness of the projections," "analysis and review together with the Trustee's legal counsel of the Acquisition transaction documents;" and "analysis and review of the independent appraiser's opinion letter."

27. On September 1, 2011, the Company employed Jeffrey J. Zander as its president and empowered him to sign the Trustee Engagement Agreement engaging Stephen M. Thompson as Trustee.

28. Also on September 1, 2011, 2nd Gen. supplemented its May 1, 2011 Valuation Report by issuing a "bring forward" letter. The letter incorporated and relied upon a "no material change" letter that had been provided by management of Zander Group Holdings, Inc. as well management's representation that the financial performance of the Zander Group

9

Holdings, Inc. had improved since May 1, 2011. 2nd Gen. concluded that the proposed transaction was not in excess of fair market value.

29. Finally, on September 1, 2011, the Company established the ESOP and paid $35,350,000 to Zander, as trustee of Toxaway Trust, in order to acquire 500,000 shares of the Company. The purchase price was based upon the conclusion of value set forth in the May 1, 2011 Valuation Report, as supplemented by the September 1, 2011 "bring forward" letter.

30. After the Stock Purchase, the ESOP owned 100% of the outstanding shares of the Company. The Company held a 49% ownership in the Business. The trusts, of which Jeffrey Zander was trustee and beneficiary, retained a 51% ownership.

31. The Valuation Report contained numerous flaws which grossly inflated the value of the Company's shares. Jeffrey J. Zander, who acted as fiduciary to the ESOP, trustee and beneficiary of the selling shareholder, president of JJZ Insurance Agency, Inc., and president of the Company, actively to lobbied for a higher conclusion as to value during preparation of the Valuation Report. Defendant Stephen M. Thompson, as Trustee to the ESOP, failed to understand and critically analyze the Valuation Report.

32. Furthermore, the Trustee failed to inquire about the critical assumptions within the Valuation Report. Accordingly, the Trustee's reliance on the Valuation Report was not reasonably justified because he did not thoroughly probe the gaps and internal inconsistencies therein.

33. Thompson lacked understanding of the valuation methodologies employed by 2nd Gen. and failed to understand why or whether certain methods were more or less appropriate when determining the Company's fair market value.

34. Had the Trustee meaningfully reviewed the Valuation Report, he would have found significant flaws and "red flags" in the Report, including, but not limited to:

   a. The failure to value the entity to be purchased by the ESOP, as the Company did not yet exist on May 1, 2011 and its existence was not accounted for in the September 1, 2011 "bring forward" letter;

   b. The failure to ensure that the information contained in the Valuation Report and referenced in the subsequent "bring forward" letter was accurate and supported by documentation;

   c. The failure to ensure that the information contained in the Valuation Report and referenced in the subsequent "bring forward" letter was accurate at the time of the Stock Purchase;

   d. The failure to question Zander's intimate involvement in the valuation process and his lobbying as to the ultimate conclusion of value;

   e. The failure to question 2nd Gen.'s primary reliance upon market approaches when reaching its conclusion as to value;

   f. The failure to question 2nd Gen.'s utilization of unorthodox and unreliable market methods;

   g. The failure to question 2nd Gen.'s inconsistent and unusual application of discounts to the market methods;

   h. The failure to properly represent the riskiness of the Business;

   i. The failure to question 2nd Gen.'s utilization of a 28% tax rate within its analysis;

11

j. The failure to question 2nd Gen.'s use of EBITDA as a proxy for net cash flows; and

k. The failure to discern the improper inclusion of an ESOP "tax shield."

35. Many of these errors would have been apparent to a prudent trustee from the face of the Valuation Report.

36. The ESOP's governing plan documents require the Trustee to, among other things, act with care, skill, prudence, and diligence; act for the exclusive purpose of the participants and their beneficiaries; to ensure that the ESOP's purchase of employer stock was for no more than "adequate consideration;" and to eschew prohibited transactions.

37. Thompson completely and unjustifiably relied upon the conclusion of value set forth in 2nd Gen.'s May 1, 2011 Valuation Report when he approved the Stock Purchase in September 1, 2011.

38. Thompson failed to engage in rigorous negotiations over the Purchase Price. He knew the value that the ESOP was expected to pay at the time that he was engaged to be Trustee and directed the ESOP to pay the price expected.

39. As a result of Thompson's approval of the Stock Purchase, Thompson caused the ESOP to significantly overpay when it purchased the Company's stock.

40. Zander and Thompson were imprudent in hiring 2nd Gen. to perform an independent valuation of the Company, given 2nd Gen.'s previous relationship with Zander and inexperience in performing valuations for ESOPs. Prior to its engagement, 2nd Gen. had developed a relationship with Zander such that 2nd Gen. knew the value Zander expected from the transaction. Thus, by employing 2nd Gen., Zander weakened the ESOP's bargaining power.

41. As a result of Zander's intimate involvement and active lobbying during the valuation process, Zander caused the ESOP to significantly overpay, to his benefit, when the ESOP purchased the Company's stock.

42. As a result of Thompson's failure to become sufficiently involved in the valuation process on behalf of the ESOP, Thompson caused the ESOP to significantly overpay when it purchased the Company's stock.

43. As Zander was intimately involved in the preparation of the Valuation Report, he had knowledge of many of its flaws. Zander failed to monitor Thompson and ensure that Thompson undertook to read, understand, and analyze the Valuation Report. Thompson failed to read, understand, and analyze the Valuation Report. His lack of diligence caused the ESOP to significantly overpay when it purchased the Company's stock.

## COUNT I
### The ESOP Transaction – Imprudence, Disloyalty, and Failure to Comply with Plan Documents - ERISA §§ 404(a)(1)(A), (B), and (D).

44. Defendants Zander and Thompson, as fiduciaries and Trustee of the ESOP, breached their fiduciary duties to the ESOP and did not act solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in violation of ERISA §§ 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) and (B) by, among other things:

a. Relying on the conclusions in 2nd Gen.'s Valuation Report and "bring forward" letter without ensuring that 2nd Gen.'s advice and their reliance thereupon was reasonably justified under the circumstances, and

b. Causing the ESOP to approve the purchase of the Company's Stock from Toxaway Trust at a price in excess of and not reflective of fair market value.

45. Defendants Zander and Thompson failed to determine the prudence of the ESOP's investments as required by the ESOP's plan document and failed to ensure that the Company followed the requirements set forth in the ESOP's plan documents, insofar as such documents and instruments are consistent with Title I of ERISA, in violation of ERISA § 404(a)(1)(D), 29 U.S.C. § 1104(a)(1)(D), by causing the ESOP to pay more than adequate consideration and by failing to act with care, skill, prudence, and diligence as related to the Stock Purchase. The Defendants also violated the ESOP plan documents by failing to act for the exclusive purpose of the participants and their beneficiaries and by engaging in prohibited transactions.

46. As a result of the foregoing breaches of fiduciary duty, Defendants Zander and Thompson caused a loss to the ESOP for which they are individually liable. ERISA § 409(a), 29 U.S.C. § 1109(a). Zander is also liable for his failure to monitor Thompson. Defendants Zander and Thompson are liable for each other's breaches, as they (a) participated in each other's breaches, (b) enabled the other to breach his duties as related to the Stock Purchase, (c) knew or should have known that the other fiduciary had breached his duty, and (d) failed to make reasonable efforts under the circumstances to remedy the breaches. ERISA §§ 405(a)(1)-(3), 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)(1)-(3), 1132(a)(2) & (5).

47. Defendant Jeffrey J. Zander had actual or constructive knowledge of each breach set forth above. As such, he is also subject to liability as a knowing participant in these fiduciary breaches.

### COUNT II
### The ESOP Transactions – Prohibited Transaction
### ERISA §§ 406(a)(1)(A), (B), and (E)

49  By influencing the conclusion as to value and by authorizing the ESOP to purchase shares of the Company stock for greater than "adequate consideration" (defined as the "fair market value of the asset as determined in good faith by the trustee or named fiduciary"), ERISA § 408(e), 29 U.S.C. 1108(e); ERISA § 3(18)(B), 29 U.S.C. 1002(18)(B), Zander and Thompson engaged in a non-exempt prohibited transactions under ERISA § 406(a)(1)(A), (B), and (E), 29 U.S.C. § 1106(a)(1)(A), (B), and (E)

    a.  By causing the ESOP to engage in transactions that it knew or should have known was a direct sale of property between the plan and a party in interest. ERISA § 406(a)(1)(A), 29 U.S.C. § 1106(a)(1)(A);

    b.  By authorizing the ESOP to accept a loan authorized by Jeffrey Zander, as trustee and beneficiary of the Toxaway Trust, Thompson and Zander engaged in a non-exempt prohibited transaction under ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B); and

    c.  By causing the Plan to acquire employer securities. ERISA § 406(a)(1)(E), 29 U.S.C. § 1106(a)(1)(E).

50.  As a result of the foregoing prohibited transactions, Defendant Jeffrey Zander, as trustee and beneficiary of the selling shareholder, received property, cash, or proceeds from the

sale or exchange of ESOP shares, which he must restore to the ESOP under ERISA § 502(a)(5), 29 U.S.C. § 1132(a)(5).

51. As a result of the forgoing prohibited transactions, Defendants Jeffrey Zander and Stephen Thompson caused a loss to the ESOP for which they are jointly and severally liable. ERISA § 409(a), 29 U.S.C. § 1109(a).

52. Defendants Zander and Thompson are also liable for each other's breaches as they participated in each other's breaches, (b) enabled the other to breach his duties, (c) knew or should have known that the other fiduciary had breached his duty, and (d) failed to make reasonable efforts under the circumstances to remedy the breaches. ERISA §§ 405(a)(1)-(3), 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)(1)-(3), 1132(a)(2) & (5).

53. Defendant Jeffrey J. Zander had actual or constructive knowledge of each breach set forth above. As such, he is also subject to liability as a knowing participant in these fiduciary breaches.

## COUNT III
### The ESOP Transactions – Prohibited Transaction
### ERISA §§ 406(b)(2 &

54. Defendant Jeffrey J. Zander, in his capacity as a fiduciary to the Plan, and Defendant Stephen M. Thompson, in his capacity as Trustee, engaged in transactions between the ESOP and themselves, in violation of ERISA § 406(b)(2), 29 U.S.C. § 1106(b)(2), by acting in any transaction on behalf of a party whose interests are adverse to the interests of the Plan, in their individual or any other capacity.

55. As a result of the forgoing breach of fiduciary duty and engagement in prohibited transactions, Defendants Jeffrey Zander and Stephen Thompson caused a loss to the ESOP for which each is personally liable. ERISA § 409(a), 29 U.S.C. § 1109(a).

56. Defendants Zander and Thompson are also liable for each other's breach as they participated in each other's breach, (b) enabled the other to breach his duties, (c) knew or should have known that the other fiduciary had breached his duty, and (d) failed to make reasonable efforts under the circumstances to remedy the breaches. ERISA §§ 405(a)(1)-(3), 502(a)(2) & (5), 29 U.S.C. §§ 1105(a)(1)-(3), 1132(a)(2) & (5).

57. Defendant Jeffrey J. Zander had actual or constructive knowledge of the breach set forth above. As such, he is also subject to liability as a knowing participant in the fiduciary breach.

## **RELIEF**

WHEREFORE, cause having been shown, the Secretary of Labor prays that this Court enter an Order:

1. Requiring Defendants Stephen M. Thompson and Jeffrey J. Zander, jointly and severally, to restore all losses to the Plan, with interest thereon, resulting from their breaches of fiduciary duty, including lost opportunity costs, resulting from its violations;

2. Requiring Defendant Stephen M. Thompson to disgorge all fees and costs, with interest, including legal fees that he or his agents received from Jeffrey J. Zander, the Business, the Company, the ESOP, or any other source for all services related to the ESOP;

3. Requiring Defendant Jeffrey J. Zander to disgorge all cash, payments, or proceeds that he or his agents received in connection with the ESOP Stock Purchase;

17

4. Permanently enjoining Defendants Thompson and Jeffrey J. Zander from serving as fiduciaries or service providers to ERISA plans in the future; and

5. Providing such other remedial relief as may be appropriate.

Respectfully submitted this the 23rd day of August, 2017.

| | |
|---|---|
| ADDRESS: | NICHOLAS C. GEALE<br>Acting Solicitor of Labor |
| Office of the Solicitor<br>U. S. Department of Labor<br>61 Forsyth Street, S.W.<br>Room 7T10<br>Atlanta, GA 30303 | STANLEY E. KEEN<br>Regional Solicitor<br><br>ROBERT M. LEWIS, JR.<br>Counsel |
| Telephone:<br>(404) 302-5489<br>(404) 302-5438 (FAX)<br>E-mail:<br>Fort.Willow@dol.gov<br>ATL.FEDCOURT@dol.gov | By: */s/ Willow Eden Fort*<br>DANE STEFFENSON<br>Senior Trial Attorney<br>WILLOW EDEN FORT<br>Attorney<br><br>Office of the Solicitor<br>U. S. Department of Labor<br>Attorneys for Plaintiff. |