# IN THE UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| R. ALEXANDER ACOSTA,<br>Secretary of Labor,<br>United States Department of Labor,<br><br>    Plaintiff,<br><br>v.<br><br>ZANDER GROUP HOLDINGS, INC., et al.,<br><br>    Defendants. | NO. 3:17-cv-01187<br><br>JUDGE CAMPBELL<br>MAGISTRATE JUDGE BROWN |

## **MEMORANDUM**

### I. Introduction

Pending before the Court are Defendants Zander Group Holdings, Inc. and Jeffrey L. Zander's Motion to Dismiss (Doc. No. 28), Plaintiff's Response (Doc. No. 37), and Defendants' Reply (Doc. No. 41). For the reasons set forth herein, Defendants' Motion to Dismiss (Doc. No. 28) is **DENIED.**

### II. Factual and Procedural Background

Through the Complaint, Plaintiff R. Alexander Acosta, the Secretary of Labor, alleges Defendants Zander Group Holdings, Inc. ("the Company"), Jeffrey J. Zander ("Zander"), and Stephen M. Thompson ("Thompson") violated the Employee Retirement Income Security Act of 1974 ("ERISA") by breaching their fiduciary duties, engaging in prohibited transactions, and acting on behalf of a party whose interests were adverse to the interests of the Zander Group Holdings, Inc. Employee Stock Ownership Plan ("the Plan"). (Doc. No. 1). Specifically, the Complaint alleges that, prior to establishment of the Plan, Zander Insurance ("the Business") was a partnership owned by the JJZ Insurance Agency, Inc., as well as two trusts, the Cardinal Trust

and the Toxaway Trust. (*Id.* ¶¶ 8, 13). Zander was allegedly the trustee and the beneficiary of both trusts, and the president of JJZ Insurance Agency, Inc. (*Id.*)

In December, 2010, Zander allegedly retained Second Generation Capital, LLC ("2nd Gen.") to conduct an independent valuation of the Business. (*Id.* ¶ 21). On May 5, 2011, 2nd Gen. prepared a preliminary valuation report, dated May 1, 2011, that concluded the fair market value of the Business was $74,000,000. (*Id.* ¶ 22). The final valuation report, also dated May 1, 2011, concluded the fair market value of the Business was $75,000,000. (*Id.*) The Complaint further alleges that, on May 28, 2011, 2nd Gen. sought to obtain documents from Zander to support the conclusions reached in its valuation report. (*Id.* ¶ 24). Instead, Zander allegedly provided 2nd Gen. with a letter stipulating to the numbers previously provided. (*Id.*)

On May 22, 2011, Zander engaged Thompson to act as Trustee to the Plan. (*Id.* ¶¶ 17-18, 23). On July 7, 2011, the Company was established, and the Toxaway Trust owned 100% of the shares of the Company. (*Id.* ¶ 8, 14, 25). On August 31, 2011, the Complaint alleges Zander again retained Thompson to act as Trustee to the Plan. (*Id.* ¶ 26). In doing so, Zander acted in his capacity as president of the Company, but he was not named as president until the following day. (*Id.*) The engagement letter provided that the Plan intended to acquire 500,000 "common shares of the Company from the Toxaway Trust . . . at an offer price of $35,350,000," and directed the Trustee to engage 2nd Gen. to serve as an independent appraiser. (*Id.*)

On September 1, 2011, the Company established the Plan, and on the same date, named Zander as president of the Company. (*Id.* ¶ 15). In that capacity, and as trustee of the Toxaway Trust, Zander allegedly caused the Toxaway Trust to sell its shares of the Company to employees who were leased to the Company from the Business, thereby establishing the Plan. (*Id.* ¶¶ 8, 15, 17). To finance the purchase, the Plan obtained a loan from the Company. (*Id*). The Plan

documents name the Company as the Employer and the Plan Sponsor. (*Id.* ¶ 16). The Company, through Zander as president, acted to administer the Plan, and is allegedly a "functional fiduciary" to the Plan and a "party in interest." (*Id.* ¶ 16).

Also on September 1, 2011, the Company allegedly empowered Zander to sign the Trustee Engagement Agreement engaging Thompson. (*Id.* ¶¶ 8, 27). On that same day, the Complaint alleges, 2nd Gen. supplemented its May 1, 2011 valuation report by issuing a "bring forward" letter, which incorporated a "no material change" letter provided by management of the Company, stating the Company's financial performance had improved since May 1, 2011. (*Id.* ¶ 28). 2nd Gen. allegedly concluded the proposed transaction was not in excess of fair market value. (*Id.*) Also, on that same day, according to the Complaint, the Company established the Plan and paid $35,350,000 to Zander, as trustee of Toxaway Trust, in order to acquire 500,000 shares of the Company. (*Id.* ¶ 29). After the stock purchase, the Plan owned 100% of the outstanding shares of the Company; the Company owned 49% ownership in the Business; and the trusts retained 51% ownership of the Business. (*Id.* ¶¶ 8, 30). Zander remained trustee and beneficiary of both trusts. (*Id.*)

The Complaint alleges 2nd Gen.'s valuation report contained numerous flaws, which grossly inflated the value of the Company's shares. (*Id.* ¶ 31). According to the Complaint, Zander actively lobbied for a higher value during preparation of the report, and Thompson failed to understand and critically analyze the report. (*Id.* ¶ 31). As a result, the Complaint alleges, the Plan significantly overpaid for shares of the Company's stock. (*Id.* ¶¶ 32-43).

Count I of the Complaint alleges Zander and Thompson breached their fiduciary duties to the Plan by relying on the conclusions in the valuation report, and by causing the Plan to purchase the Company's stock from Toxaway Trust in excess of fair market value, in violation of

ERISA § 404(a)(1)(A), (B), and (D), 29 U.S.C. § 1104(a)(1)(A), (B), and (D). (*Id.* ¶¶ 44, 45). Count II alleges Zander and Thompson engaged in a non-exempt prohibited transaction by influencing the conclusion as to the value of the stock, and by authorizing the Plan to purchase the stock at a price above fair market value, in violation of ERISA § 406(a)(1)(A), (B), and (E), 29 U.S.C.§ 1106(a)(1)(A), (B), and (E). (*Id.* ¶ 49). Count III alleges Zander and Thompson violated ERISA § 406(b)(2), 29 U.S.C. §1106(b)(2), by acting in a transaction on behalf of a party whose interests were adverse to the interests of the Plan. (*Id.* ¶ 54).

The Complaint also alleges Zander is liable for failure to monitor Thompson, and that Zander and Thompson are liable for each other's breaches. (*Id.* ¶¶ 46, 52, 56).

III. <u>Analysis</u>

A. <u>The Standards Governing Motions To Dismiss</u>

In considering a motion to dismiss, a court must determine whether the plaintiff has sufficiently alleged "a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). Well-pleaded factual allegations are accepted as true and are construed in the light most favorable to the nonmoving party. 129 U.S. at 1950: *Mills v. Barnard*, 869 F.3d 473, 479 (6th Cir. 2017).

Defendants have attached as exhibits to their Motion to Dismiss a Trustee Engagement Agreement (Doc. No. 29-1), and a Unanimous Written Consent of the Board of Directors of Zander Group Holdings, Inc. To Action Taken Without a Meeting (Doc. No. 29-2). Plaintiff argues the exhibits should be excluded as they are unauthenticated and should not be considered

with a motion to dismiss. Defendants argue the documents should be considered because they were referred to in the Complaint. The Court need not resolve this issue, however, because, even if the Court considers the documents filed by Defendants, the motion to dismiss is without merit for the reasons described below.

B. Allegations Involving Zander Group Holdings, Inc.

Defendants seek dismissal of Zander Group Holdings, Inc. ("the Company") because they contend the Complaint fails to allege any actionable conduct by the Company. Plaintiff argues dismissal is unwarranted because the Complaint adequately states claims against the Company as a fiduciary and as a knowing participant in Zander's fiduciary breaches.

"Fiduciary status is the key to unlocking ERISA's civil-enforcement scheme because the statute permits a suit 'by the Secretary [of Labor], or by a participant beneficiary or fiduciary for appropriate relief' under [29 U.S.C. § 1109].'" *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006); *see also* 29 U.S.C. § 1132. ERISA defines a "fiduciary" to include anyone who "exercises any discretionary authority or discretionary control respecting management of [a] plan" or "has any discretionary authority or discretionary responsibility in the administration of [a] plan." 29 U.S.C. § 1002(21)(A);[1] *see also Deschamps v. Bridgestone Americas, Inc. Salaried Employees Retirement Plan*, 2016 WL 4728029 (6th Cir. Sept. 12, 2016). In determining whether a

---

[1] Section 1002(21)(A) provides as follows:

> (21)(A) Except as otherwise provided in subparagraph (B), a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan. Such term includes any person designated under section 1105(c)(1)(B) of this title.

5

corporation is a fiduciary, the Sixth Circuit uses a "functional approach" by which it looks to whether the corporation acts as a fiduciary with respect to the conduct at issue. *Briscoe*, 444 F.3d at 486. ERISA makes any person found to be a fiduciary personally liable for any damages caused by that person's breach of fiduciary duties. *Id.*; 29 U.S.C. § 1109.

Among other allegations, the Complaint contends the Company is a functional fiduciary to the Plan because it acted through Zander, its president, to engage Thompson as Trustee, and had a duty to monitor Thompson's actions. (*Id.* ¶ 20). In addition, the Complaint alleges the Company allowed Zander, as its president, to administer the Plan rather than the Committee it created to do so. (*Id.* ¶¶ 16, 20). Thus, Plaintiff seeks to hold the Company liable for the alleged fiduciary breaches by Zander. The Complaint also alleges the Company is a party in interest, under 29 U.S.C. § 1002(14) (B),[2] because it is an employer whose employees are covered by the Plan. (*Id.*)

The Court is persuaded the allegations of the Complaint sufficiently state a claim against the Company. To the extent Defendants argue the allegations against the Company must be specifically referenced in the three "counts" of the Complaint to avoid dismissal, they failed to cite any authority to that affect. *See Fabian v. Fulmer Helmets, Inc.*, 628 F.3d 278, 281 (6th Cir. 2010) ("So long as we can 'draw the reasonable inference that the defendant is liable for the misconduct alleged' . . , a plaintiff's claims must survive a motion to dismiss.")

---

[2] Section 1002(14)(C) [Plaintiff mistakenly cited Subpart B] provides:

(14) The term "party in interest" means, as to an employee benefit plan—

\* \* \*

(C) an employer any of whose employees are covered by such plan;

B. <u>Allegations Involving Zander</u>

Defendants argue the allegations involving Zander fail to state a claim because they are "unsupported and/or contradictory." (Doc. No. 29, at 3). More specifically, Defendants argue, the Complaint alleges Zander was acting on behalf of the seller when he "caused" the Plan to buy the Company's stock from the Toxaway Trust, but offers no facts to explain how Zander had any authority to "cause" or "authorize" the Plan to take actions.

Defendants also argue, relying on various documents attached to the Motion to Dismiss, that Zander did not retain Thompson to act as Trustee for the Plan on August 31, 2011 because the engagement agreement states it is between the Company and Thompson. According to Defendants, that document "further reflects that Zander was also not a party to the prior agreement with the Trustee, as that agreement, dated May 22, 2011, was 'between the Trustee and JJZ, Inc.'" (Doc. No. 29, at 4). Defendants also contend the Complaint does not allege facts to support the assertion that Zander had actual or constructive knowledge of the alleged breaches by the Trustee.

Plaintiff argues the Complaint states a claim against Zander, and points to the allegations that Zander acted as a functional fiduciary, a co-fiduciary with Thompson, and a knowing participant in Thompson's breaches. Plaintiff also points to the allegations that Zander actively influenced 2nd Gen.'s valuation of the stock to be sold to the Plan, acted to engage Thompson as Trustee on more than one occasion before he became president of the Company, and failed to monitor Thompson's actions.

As discussed above, the Complaint alleges Zander actively lobbied and used his influence with 2nd Gen. and with the Trustee to obtain a higher price for the stock that he sought to sell to the Plan, and that he also acted to administer the Plan in lieu of the Committee that was created

7

to do so. (Doc. No. 1 ¶¶ 9, 17, 20, 21, 31, 40, 41, 43). These allegations are sufficient to state a claim that Zander breached his duties as a functional fiduciary. 29 U.S.C. § 1002(21)(A); *Deschamps, supra*.

As for Thompson, the Complaint alleges Zander: (1) engaged Thompson as Trustee on two occasions prior to Zander's appointment as president of the company on September 1, 2011; (2) failed to monitor Thompson as he approved 2nd Gen's flawed valuation report; and (3) participated in Thompson's breach of fiduciary duties. (*Id.* ¶¶ 17, 18, 21, 23, 26, 43, 46). These allegations are sufficient to state a claim against Zander in connection with the actions or inactions of Thompson.

Accordingly, the Court is persuaded the allegations of the Complaint sufficiently states claims against the Company and Zander, and Defendants' Motion to Dismiss is without merit.

IV. Conclusion

For the reasons set forth above, Defendants' Motion to Dismiss (Doc. No. 28) is denied.

It is so **ORDERED**.

_____
WILLIAM L. CAMPBELL, JR.
UNITED STATES DISTRICT JUDGE