# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| R. ALEXANDER ACOSTA, | ) | |
| Secretary of Labor, | ) | |
| United States Department of Labor, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:17-cv-01187 |
| | ) | Judge Campbell/Magistrate Judge Brown |
| | ) | |
| ZANDER GROUP HOLDINGS, INC.; | ) | |
| JEFFREY J. ZANDER, an individual; | ) | |
| STEPHEN M. THOMPSON, an individual; and | ) | |
| ZANDER GROUP HOLDINGS, INC. | ) | |
| EMPLOYEE STOCK OWNERSHIP PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JEFFREY J. ZANDER AND ZANDER GROUP HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................ 4

   A.   Undisputed Facts ...................................................................................... 4

   B.   Legal Standard for Summary Judgment ................................................. 11

   C.   Legal Framework for ESOP Transactions ............................................. 12

   D.   Summary of Plaintiff's Claims .............................................................. 14

III.  ARGUMENT ................................................................................................... 15

   A.   The Breach of Fiduciary Duty Claims Against Mr. Zander Fail Because He Was Not a Fiduciary for the ESOP With Respect to the ESOP Transaction ...................................... 15

   B.   Mr. Zander Did Not Have a Duty to Monitor Mr. Thompson ........................................... 19

   C.   Mr. Zander Is Not Liable as a Co-Fiduciary for Mr. Thompson's Alleged Breaches of Fiduciary Duty ............................................................................ 23

   D.   The Prohibited Transaction Claims Against Mr. Zander Fail Because Mr. Zander Was Not a Fiduciary for the ESOP and Did Not Cause the ESOP to Enter into the Alleged Transactions .................................................................................... 27

   E.   Mr. Zander Is Not Liable as a Non-Fiduciary Party in Interest Because He Did Not Knowingly Participate in Mr. Thompson's Alleged Breaches ......................................... 30

   F.   The Secretary Fails to State any Cause of Action Against Zander Group Holdings ......... 34

IV.   CONCLUSION ................................................................................................. 35

# I. <u>INTRODUCTION</u>

This lawsuit concerns a September 1, 2011 transaction in which the Zander Group Holdings, Inc. Employee Stock Ownership Plan ("ESOP" or "Plan") purchased the stock of Zander Group Holdings, Inc. ("ZGH" or the "Company") for $35.35 million from a trust of which Defendant Jeffrey J. Zander was trustee and a beneficiary (the "ESOP Transaction"). The ESOP is a type of employee benefit plan that allows the employees participating in the ESOP to own stock in the Company without having to defer any of their own salaries. Defendant Stephen M. Thompson was the independent trustee who represented the ESOP and its participants in connection with the ESOP Transaction.

By any measure, the ESOP Transaction has been a great success for the ESOP's participants. ZGH has thrived since the transaction. The Company has consistently met or exceeded its financial projections, and its stock price has more than doubled in the years after the transaction. The ESOP's participants have shared in that financial success, with many participants seeing the value of the stock in their ESOP accounts grow well into the six figures – and, in some cases, over $1 million – in only a few years. Even the Secretary of Labor's ("Secretary" or "Plaintiff") own litigation expert has conceded that this sort of year-after-year growth is a significant benefit for the ESOP's participants and what one hopes for when a company establishes an ESOP. *See* Ex. 1, Schweihs Dep. Tr. at 96:11-97:9.

In spite of these tremendous financial gains to the ESOP's participants, the Secretary chose to file this lawsuit claiming that Mr. Zander and Mr. Thompson violated the Employee Retirement Income Security Act of 1974 ("ERISA") and that the participants have somehow been harmed. The crux of the Secretary's lawsuit is that the ESOP paid more than fair market value for the Company's stock in the ESOP Transaction. While that claim is baseless – as the

Defendants will demonstrate if this case goes to trial – the Court need not reach the question of whether the ESOP overpaid for the stock in order to grant summary judgment to Mr. Zander and ZGH (collectively, the "Zander Defendants").

As a threshold matter, the Court should grant summary judgment to ZGH because the Secretary has not asserted any claims against ZGH. Although ZGH is named as a defendant, there are no causes of action or allegations of wrongdoing against ZGH in the Complaint (Dkt. No. 1), and the Complaint does not seek any relief or remedies from ZGH. *See generally* Aug. 23, 2017 Complaint (Dkt. No. 1) ("Complaint" or "Compl.").

The Secretary's claims against Mr. Zander turn on the theory that he was an ERISA fiduciary in connection with the ESOP Transaction and breached his fiduciary duties by causing the ESOP to overpay for the Company's stock and/or by failing to monitor Mr. Thompson to ensure that he satisfied his duties as the ESOP's trustee. Alternatively, the Secretary claims that Mr. Zander is liable as a non-fiduciary for knowingly participating in Mr. Thompson's alleged breaches.

The Secretary's claims against Mr. Zander fail as a matter of law. To begin with, the undisputed facts and settled law make clear that Mr. Zander *was not a fiduciary* for the ESOP in connection with the ESOP Transaction. To the contrary, Mr. Zander was the selling shareholder on the opposite side of the transaction from the ESOP. It was Mr. Thompson who was the fiduciary representing the ESOP with sole discretionary authority to cause the ESOP to acquire the Company's stock. Indeed, the whole purpose of retaining Mr. Thompson was for him to act solely on behalf of the ESOP's interests as the buyer in the contemplated transaction in which Mr. Zander was the selling shareholder. In that role, it was Mr. Thompson – not Mr. Zander – who evaluated and ultimately approved the ESOP Transaction on behalf of the ESOP. Because

2

Mr. Zander was not a fiduciary for the ESOP and did not cause the ESOP to enter into the ESOP Transaction, he cannot be liable for breach of fiduciary duty or for causing the ESOP to engage in "prohibited transactions" under ERISA. In fact, the Secretary's theory that a selling shareholder like Mr. Zander owes fiduciary duties to the ESOP on the opposite side of an ESOP transaction turns the law on its head and would render ESOP transactions unworkable.

Mr. Zander also had no duty to monitor Mr. Thompson. That is because, under ERISA, only the person who appoints a fiduciary has a duty to monitor that fiduciary, but the undisputed facts show that Mr. Zander did not appoint Mr. Thompson to be the ESOP's trustee. The Secretary's claim that Mr. Zander knowingly participated in Mr. Thompson's alleged breaches likewise fails. Even if it were true that Mr. Thompson violated ERISA by causing the ESOP to overpay for the Company's stock (and it is not), Mr. Zander did not know or have any reason to know that. Quite the opposite, the undisputed facts show that Mr. Zander believed that, if anything, the ESOP paid *less* than fair market value for the stock, and that his belief was well-founded. The record also belies the notion that Mr. Zander participated in Mr. Thompson's alleged breaches. Mr. Zander had no involvement in Mr. Thompson's decision-making process in which he approved the ESOP Transaction and did not have access to the independent valuation analysis that Mr. Thompson developed and relied on in making his fiduciary decision.

In short, the Secretary's claims against the Zander Defendants have no basis in fact or law. The ESOP Transaction has been a success story for everyone involved, and it is exactly the type of result Congress had in mind when it authorized ESOPs and enacted the rules for ESOP stock purchases. The Secretary's lawsuit is seriously misguided and should never have been filed. The Zander Defendants respectfully request that the Court grant summary judgment on all claims against them.

3

## II.    BACKGROUND

### A.    Undisputed Facts

Mr. Zander began working for Zander Insurance Agency, a company owned by his father, in 1986.  *See* Ex. 2, Zander Dep. Tr. at 12:1-15.  He started as an agent and quickly became one of the business's top producers.  *See* Ex. 3, May 5, 2011 "Zander Insurance Group Equity Interest – ESOP Valuation" by 2nd Generation Capital LLC ("2nd Gen. Report") at Thompson-000144-Thompson 000145.  Mr. Zander later formed two companies through which he operated his own insurance business:  JJZ Insurance Agency, Inc. ("JJZ, Inc."), an S corporation, and JJZ Insurance Agency ("JJZIA"), a general partnership (collectively, the "Zander Business").  *See* Ex. 3, 2nd Gen. Report at Thompson 000145-Thompson 000146. JJZIA was owned by two trusts, the Cardinal Trust and the Toxaway Trust, Mr. Zander was a trustee and a beneficiary of these trusts.  *See* 2nd Gen. Report at Thompson 000147, 153.  The Zander Business is an independent insurance agency offering, among other products, term life insurance, property and casualty insurance, and identity theft protection.  *See* Ex. 2, Zander Dep. Tr. at 13:1-22; Ex. 3, 2nd Gen. Report at Thompson-000144, 151.

The Zander Business was highly successful in the period leading up to the ESOP Transaction, with revenues and earnings growing year after year.  For example, in 2006, the business had $10.77 million in revenues and $4.34 million in EBITDA.  *See* Ex. 3, 2nd Gen. Report at Thompson 000222.  By 2010, the year before the ESOP Transaction, the Zander Business's revenues had grown to over $23 million and EBITDA had grown to nearly $15 million.  *Id.*  By July 2011, only a couple months before the ESOP Transaction closed, the Zander Business's financial performance improved even more.  As of that month, the business had already achieved revenues of $15 million and net profits of $9.85 million – increases of approximately 8% and 20%, respectively, over the previous year. *See* Ex. 4, July 31, 2011 JJZ,

4

Inc. Income and Expense Statement at 2NDGEN000273-274; Ex. 5, JJZIA Income and Expense Statement at Zander_0002587-88; Ex. 6, JJZIA Profit & Loss YTD Comparison at 2NDGEN001742-43; *see also* Ex. 2, Zander Dep. Tr. at 244:19-245:2.

Mr. Zander began considering potentially selling part of the Zander Business to an ESOP in late 2009 or early 2010. *See* Ex. 2, Zander Dep. Tr. at 26:4-16. After the decision was made to move forward with the potential ESOP Transaction, Mr. Thompson was engaged to be the trustee for the ESOP. Mr. Thompson, who had an M.B.A., was a certified public accountant with over 40 years of accounting, finance, and valuation experience, as well as substantial experience as an ESOP trustee. *See* Ex. 7, Thompson Dep. Tr. at 13:13-18:11, 211:2- 213:15. He also had experience with multiple insurance agency clients. *Id.* at 158:12-15. Initially, JJZ, Inc. engaged Mr. Thompson as trustee for the ESOP. *See* Ex. 8, May 22, 2011 Trustee Engagement Agreement at Thompson 000509-Thompson 000515; Ex. 2, Zander Dep. Tr. 190:19-191:3, 193:15-22. That was because the final structure for the proposed ESOP Transaction was not yet in place, and ZGH had not yet been formed. *See* Ex. 7, Thompson Dep. Tr. at 53:15-22, 54:12-55:13. Subsequently, ZGH engaged Mr. Thompson as the ESOP's trustee and authorized Mr. Zander as President of ZGH to sign Mr. Thompson's engagement letter. *See* Ex. 9, September 1, 2011 Unanimous Written Consent, Part 4 – ESOP Formation Doc 26(a) at 2-3; Ex. 10, July 7, 2011, Organizational Consent of the Board of Directors of Zander Group Holdings, Inc. at Thompson 002214.

As his engagement agreement sets forth, it was Mr. Thompson's role as independent trustee to represent the ESOP in connection with the ESOP Transaction and determine whether or not to approve the transaction. *See* Ex. 11, August 31, 2011 Trustee Engagement Agreement at Thompson 000500 ("The Trustee's initial engagement shall consist of an evaluation of the

Offer on behalf of the Plan. If the Trustee determines that the Offer is not in excess of adequate consideration and the owners of the Company Stock agree to sell their shares to the Trustee, the Trustee will then complete the purchase of Company Stock."). Mr. Zander, who would potentially be selling part of his interest in the Zander Business to the ESOP, was on the opposite side of the ESOP Transaction from Mr. Thompson and the ESOP. *See* Ex. 12, Eagle Dep. Tr. at 17:16-19.

The structure of the potential ESOP Transaction that ultimately was considered, and later agreed upon, was that the ESOP would purchase 100% of the stock of a newly-formed holding company called Zander Group Holdings, Inc. ("ZGH") from Toxaway Trust. *See* Ex. 3, 2nd Gen. Report at Thompson_000244; Ex. 13, Mercer Valuation as of December 31, 2012 at ZANDER_0001824-25. ZGH, in turn, would own 49% of the Zander Business, with the other 51% of the business owned by Cardinal Trust. *Id.*[1]

Mr. Thompson engaged 2nd Generation Capital LLC ("2nd Generation") to serve as his valuation advisor in connection with the ESOP Transaction. *See* Ex. 14, Holmes Dep. Tr. at 167:5-168:23. 2nd Generation's personnel had significant valuation experience. *See* Ex. 14, Holmes Dep. Tr. at 10:19-14:22; Ex. 3, 2nd Gen. Report at Thompson-000209-20. Mr. Thompson also engaged Brian Eagle from the law firm Eagle & Fein to be his legal advisor. *See* Ex. 12, Eagle Dep. Tr. at 16:7-24. Mr. Eagle was a highly qualified ESOP attorney with 17 years of experience counseling clients on ESOP transactions. *Id.* at 10:6-13:25. As discussed below, Mr. Eagle and 2nd Generation assisted Mr. Thompson in performing due diligence and negotiating the material economic and legal terms of the proposed ESOP Transaction. *See* Ex.

---

[1] In connection with the ESOP Transaction, JJZ, Inc.'s assets would be contributed to JJZIA. *See* Ex. 3, 2nd Gen. Report at Thompson_000244; Ex. 12, Eagle Dep. 46:18-47:18.

6

12, Eagle Dep. Tr. at 16:7-17:7; Ex. 14, Holmes Dep. Tr. at 167:5-168:23; Ex. 15, September 1, 2011 Bring Forward Letter at 2NDGEN001056-2NDGEN001058.

As part of the due diligence process, 2nd Generation prepared a valuation report, which valued the Zander Business at $75 million. *See* Ex. 3, 2nd Gen. Report at Thompson 000133, 200; Ex. 15 September 1, 2011 Bring Forward Letter at 2NDGEN001056-2NDGEN001058. The valuation took into account, among other things, the business's historical financial performance for the five years ending December 31, 2010. *See* Ex. 3, 2nd Gen. Report at Thompson 000162, 222. As explained above, during those years, the business's revenue and earnings grew consistently each year, and the business's performance improved even more in the months leading up to the ESOP Transaction in 2011. 2nd Generation's valuation report did not take into account this improved performance in 2011. *Id.* at Thompson 000165. Additionally, as part of its valuation, 2nd Generation used financial projections of the business's future performance. Those projections forecasted a growth rate that was lower than the rate at which the business had grown in the years leading up to the ESOP Transaction. Specifically, while the business's EBITDA had grown at a compound annual growth rate of approximately 45% from 2007 to 2010, the projections forecast a compound annual growth rate of only approximately 4.5%. *Id.* at Thompson 000191, 222.

On behalf of Mr. Thompson, Mr. Eagle negotiated multiple terms of the proposed ESOP Transaction with representatives for Mr. Zander and the Company. *See* Ex. 12, Eagle Dep. Tr. at 24:13-21; 30:21-25, 31:1-3; Ex. 2, Zander Dep. Tr. at 180:14-15. For example, the parties negotiated the amortization schedule and interest rate on the loan used to finance the transaction, an amendment to the partnership agreement to ensure ZGH received 49% of JJZIA's revenues, the management agreement between the Company and JJZIA, multiple representations and

7

warranties, Mr. Zander's employment agreement, the vesting schedule for the ESOP participants, and a separate 401(k) retirement plan for the Company's employees. *See* Ex. 12, Eagle Dep. Tr. at 20:2-20, 24:13-21, 27:2-14, 31:19-32:3, 36:3-39:14, 40:12-44:4; Ex. 2, Zander Dep. Tr. at 180:10-181:7. During the due diligence and negotiation process, Mr. Zander, the Company, and their representatives provided documents and information to Mr. Thompson and his representatives in response to their requests. *See* Ex. 2, Zander Dep. Tr. at 203:19-205:25; Ex. 14, Holmes Dep. Tr. at 124:7-125:24; Ex. 12, Eagle Dep. Tr. at 17:20-18:2. 2nd Generation also made multiple site visits to the Zander Business's offices and interviewed multiple members of management as well as the business's outside advisors. *See* Ex. 2, Zander Dep. Tr. at 203:19-205:25; Ex. 3, 2nd Gen. Report at Thompson 000141; Ex. 15, September 1, 2011 Bring Forward Letter at 2NDGEN001057. Additionally, Mr. Thompson met with the CFO and members of the accounting department to go over the business's financial information in detail. *See* Ex. 7, Thompson Dep. Tr. at 72:12-75:1, 76:14-77:4.

Unsurprisingly, as the selling shareholder, Mr. Zander expressed at times that he hoped for the highest supportable value for the business. *See* Ex. 2, Zander Dep. Tr. at 117:1-118:1. However, he also expressed that the projections used in valuing the business should be conservative. *See id.* While he was not a valuation professional, Mr. Zander believed that the valuation and proposed purchase price for ZGH's stock was lower than fair market value, given the conservative projections and the business's improved performance in 2011. *Id.* at 39:3-20, 92:8-93:6, 102:7-14, 223:4-18, 225:15-24, 233:13-25; 244:10-245:2.

In evaluating the proposed ESOP Transaction, Mr. Thompson reviewed and considered 2nd Generation's valuation, and went over the valuation with 2nd Generation, but he did not base his decision to approve the transaction on 2nd Generation's valuation. *See* Ex. 12, Eagle

Dep. Tr. at 48:17-49:10; Ex. 7, Thompson Dep. Tr. at 162:6-163:15, 72:12-75:1, 211:10-212:12, 245:5-19; Ex. 14, Holmes Dep. 211:16-25. Rather, Mr. Thompson performed and relied upon his own independent analysis of the value of the Company. *See id.*; *see also* Ex. 16, August 2011 Thompson "Test of Value – DCF" at Thompson 001068-71; Ex. 17, August 2011 Thompson "Test of Value – 2nd Gen DCF" (Thompson Ex. 42); Ex. 18, Thompson Summary of Prior Growth at Thompson 000272; Ex. 19, Thompson Cash Flow Projections at Thompson 000274. Mr. Thompson did not share his independent analysis with Mr. Zander or 2nd Generation. *See* Ex. 7, Thompson Dep. Tr. at 164:7-14. Mr. Zander was not involved in Mr. Thompson's decision-making process concerning whether to approve the ESOP Transaction. *See* Ex. 2, Zander Dep. Tr. at 221:14-21; Ex. 7, Thompson Dep. Tr. at 164:7-14; Ex. 12, Eagle Dep. Tr. at 51:21-52:11. In performing his independent analysis, Mr. Thompson considered more recent financial information than 2nd Generation took into account in its valuation. *See* Ex. 7, Thompson Dep. Tr. at 72:12- 75:1, 159:25-161:22. The more recent financial information from 2011 showed an increase in the business's performance, which, had it been taken into account, would have increased the value of the business in Mr. Thompson's view. *See* Ex. 20, July 19-22, 2011 Email Chain at 2NDGEN000777; Ex. 7, Thompson Dep. Tr. at 72:12- 75:1; 159:25-161:22; 164:3-14. Mr. Thompson's independent valuation of the business therefore yielded a substantially higher value than 2nd Generation's valuation. *See id.*; *see also* Ex. 16, August 2011 Thompson "Test of Value – DCF" at Thompson 001068-71; Ex. 17, August 2011 Thompson "Test of Value – 2nd Gen DCF" (Thompson Ex. 42). In light of his valuation analysis, Mr. Thompson determined that the proposed purchase price for the ZGH stock was likely less than, but certainly no more than, fair market value. *See id*; *see also* Ex. 12, Eagle Dep. Tr. at 48:23-49:3. He therefore approved the ESOP's purchase of the Company's stock and

caused the ESOP to enter into the ESOP Transaction.  *See* Ex. 21, Stock Purchase Agreement (Eagle Ex. 22) at 9, 43; Ex. 22, Email from S. Thompson to J. Zander dated July 21, 2011 at KSM 00440.

The ESOP was formed effective September 1, 2011, the date of the ESOP Transaction. Ex. 23, Plan Document, Part 1 – Plan Documents, Doc 4 at Sec. 1.02.  The ESOP Transaction was financed through a loan from Toxaway Trust to the Company, and a loan from the Company to the ESOP, which Mr. Thompson approved on behalf of the ESOP.  *See* Ex. 24, Loan and Pledge Agreement (Outside Loan) at Thompson 001698-Thompson 001722; Ex. 25, ESOP Loan and Pledge Agreement at Thompson 001776, 83.

The ESOP is administered by the Zander Group Holdings, Inc. Employee Ownership Plan Committee ("ESOP Committee").  *See* Ex. 23, Plan Document, Part 1 – Plan Documents, Doc 4 at Sec. 17.01; Ex. 9, September 1, 2011 Unanimous Written Consent, Part 4 – ESOP Formation Doc 26(a), at 1-2.  Mr. Zander was not a member of the ESOP Committee, and was not named as a fiduciary for the ESOP in the Plan Document.  *See* Ex. 9, September 1, 2011 Unanimous Written Consent, Part 4 – ESOP Formation Doc 26(a), at 2; Ex. 2, Zander Dep. Tr. at 196:16-197:1; Ex. 23, Plan Document, Part 1 – Plan Documents Doc 4.

Since the ESOP Transaction closed, ZGH has outperformed the projections used in 2nd Generation's report.  *See* Ex. 3, 2nd Gen. Report at Thompson 000191; Ex. 26, Mercer Valuation as of December 31, 2015 at ZANDER_0001324.[2]  The Company's stock price has increased each year since the ESOP Transaction, and has more than doubled in the years following the

---

[2] Specifically, in the 2nd Generation report, the cash flows projected were $16.2 million for 2012, $17.3 million for 2013, $18 million for 2014, and $18.7 million for 2015.  The Company's actual cash flows were $18.3 million in 2012, $21.2 million in 2013, $24.1 million in 2014, and $29.1 million in 2015.

10

transaction.[3]  As a result, the value of the ESOP participants' accounts has increased

substantially since the ESOP Transaction.[4]  Many ESOP participants have account values in the

six figures, and some participants have seen their account values rise into the seven figures.  *See*

Ex. 36, Acuff Participant Allocation and Compliance Testing Summary Report for the Plan Year

Ended December 31, 2016 at ZANDER_0005225-52.

### B.    <u>Legal Standard for Summary Judgment</u>

Summary judgment is appropriate "if the movant shows that there is no genuine dispute

as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P.

56(a); *see also Dargie v. United States*, 742 F.3d 243, 245 (6th Cir. 2014).  To withstand a

properly supported summary judgment motion, the non-moving party "may not rest upon the

mere allegations or denials of his pleading," but rather "must set forth specific facts showing that

there is a genuine issue for trial."  *Mayers v. Williams*, No. 16-5409, 2017 WL 4857567, at *1

(6th Cir. Apr. 21, 2017) (internal quotations omitted); *see also Sandifer v. Sparks*, No. 1:13-

0138, 2016 WL 70826, at *1 (M.D. Tenn. Jan. 6, 2016).  "A district court is not required to

---

[3] *See* Ex. 13, Mercer Valuation as of December 31, 2012 at ZANDER_0001850 ($41,145,000 total value of common equity, $82 value per share); Ex. 27, Mercer Valuation as of December 31, 2013 at ZANDER_0001972 ($51,693,000 total value of common equity, $103 value per share); Ex. 28, Mercer Valuation as of December 31, 2014 at ZANDER_0001186 ($56,602,000 total value of common equity, $113 value per share); Ex. 26, Mercer Valuation as of December 31, 2015 at ZANDER_0001278 ($68,656,000 total value of common equity, $137 value per share); Ex. 29, Mercer Valuation as of December 31, 2016 at ZANDER_0001452 ($76,206,000 total value of common equity, $147 value per share); Ex. 30, Mercer Valuation as of December 31, 2017 at ZANDER_0001588 ($86,553,000 total value of common equity, $180 value per share).

[4] *See* Ex. 31, Acuff Participant Allocation and Compliance Testing Summary Report for the Plan Year Ended December 31, 2011, Part 7 – Post Formation Doc 14(a), at 4 ($252,368.24 ESOP Balance for all employees as of 12-31-2011); Ex. 32, Acuff Participant Allocation and Compliance Testing Summary Report for the Plan Year Ended December 31, 2012, Part 7 – Post Formation Doc 14(b), at 5 ($2,910,926.28 ESOP Balance for all employees as of 12-31-2012); Ex. 33, Acuff Participant Allocation and Compliance Testing Summary Report for the Plan Year Ended December 31, 2013, Part 7 – Post Formation Doc 14(c), at 4 ($6,354,844.68 ESOP Balance for all employees as of 12-31-2013); Ex. 34, Acuff Participant Allocation and Compliance Testing Summary Report for the Plan Year Ended December 31, 2014, Part 7 – Post Formation Doc 14(d), at 5 ($9,087.651.60 ESOP Balance for all employees as of 12-31-2014); Ex. 35, Acuff Participant Allocation and Compliance Testing Summary Report for the Plan Year Ended December 31, 2015 at ZANDER_5011 ($11,686,357.23 ESOP Balance for all employees as of 12-31-2015); Ex. 36, Acuff Participant Allocation and Compliance Testing Summary Report for the Plan Year Ended December 31, 2016 at ZANDER_0005213 ($15,346,115.82 ESOP Balance for all employees as of 12-31-2016).

11

speculate on which portion of the record the nonmoving party relies, nor is it obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Carreno v. DOJI, Inc.*, 668 F. Supp. 2d 1053, 1060 (M.D. Tenn. 2009) (quoting *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).  Rather, it is the nonmoving party's burden to "provid[e] specific facts demonstrating that there remains a genuine issue of material fact" for trial.  *Sandifer*, 2016 WL 70826, at *1.

### C.     Legal Framework for ESOP Transactions

ESOPs are retirement plans created by Congress as a means of fostering employee ownership by allowing the ESOP to purchase the stock of a company from the company's owners.  Congress views employee stock ownership as an important goal that it has sought to further by facilitating and encouraging the use of ESOPs.  *See, e.g.*, *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 420 (2014) ("promot[ing] employee ownership of employer stock" is "a goal that Congress views as important"); *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998) ("[T]he concept of employee ownership constituted a goal in and of itself.").

The purchase of company stock by an ESOP from company officers or directors is technically a "prohibited transaction" under ERISA section 406(a).  Under ERISA sections 3(14)(C), (H), 29 U.S.C. § 1002(14)(C), (H), a "party in interest" is an "employee, officer, director . . . or a 10 percent or more shareholder directly or indirectly" of "an employer any of whose employees are covered by the plan," and ERISA section 406(a) prohibits a fiduciary from "caus[ing] the plan to engage in" the "sale or exchange . . . of any property between the plan and a party in interest," including the "acquisition, on behalf of the plan, of any employer security."  29 U.S.C. § 1106.  The Section 406(a) transactions are "technical" because they are facially prohibited out of a concern for a potential conflict of interest, but they also are accompanied by

statutory and regulatory exemptions because Congress recognized that it is often in the interest of participants and beneficiaries that a plan engage in them.

Recognizing that ERISA's prohibited transaction rules would "significantly hamper the implementation of ESOPs, particularly by small companies," Congress created a "conditional exemption from the prohibited transaction rules for acquisition of employer securities by ESOPs and certain other plans." *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) (quotations omitted). The exemption "permits the sale of employer stock by a party in interest to an ESOP if the purchase is made for 'adequate consideration.'" *Id.* (citing 29 U.S.C. §1108(e)). ERISA defines "adequate consideration" in the context of closely-held corporations as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary pursuant to the terms of the plan and in accordance with regulations promulgated by the Secretary [of Labor]." *Id.* (citing 29 U.S.C. §1002(18)(b)); *Keach v. U.S. Tr. Co.*, 419 F.3d 626, 636 (7th Cir. 2005) (same); *Chao v. Hall Holding Co.*, 285 F.3d 415, 436 (6th Cir. 2002) (same).

A finding of "adequate consideration" is "'expressly focused upon the *conduct of* the fiduciaries . . . . ESOP fiduciaries will carry their burden to prove that adequate consideration was paid by showing that they arrived at their determination of fair market value by way of a prudent investigation in the circumstances then prevailing.'" *Chao*, 285 F.3d at 437 (quoting *Donovan v. Cunningham*, 716 F.2d 1455, 1467-68 (5th Cir. 1983)). To assist in a prudent investigation, fiduciaries often "secur[e] an independent assessment from a financial advisor or legal counsel." *Id.* at 430. Although ERISA fiduciaries "need not become experts in the valuation of closely-held stock" because "they are entitled to rely on the expertise of others," *Donovan*, 716 F.2d at 1474, a fiduciary still must "investigate the expert's qualifications, provide the expert with complete and accurate information, and make certain that reliance on the expert's

advice is reasonably justified under the circumstances." *Keach*, 419 F.3d at 637 (internal quotations omitted).

In addition, ESOP transactions often involve a loan to the ESOP that is used to purchase the company stock. The loan is typically made by either the sponsoring company and/or an external lender. *See, e.g.*, *Keach*, 419 F.3d at 630, 633; *Donovan*, 716 F.2d at 1460. After due diligence is completed, if the trustee is satisfied that the sale of the stock is for adequate consideration, the trustee approves the ESOP's purchase of the stock. *See, e.g.*, *Keach*, 419 F.3d at 633, 639, 642.

### D.  Summary of Plaintiff's Claims

The Complaint contains three Counts asserting claims against Defendants Zander and Thompson. Although the Secretary named ZGH as a defendant, he did not assert any claims against ZGH or request any relief from ZGH.

In Count I, the Secretary alleges that Mr. Zander and Mr. Thompson breached their fiduciary duties to the ESOP under ERISA sections 404(a)(1)(A), (B), and (D) by unreasonably relying on 2nd Generation's valuation report and causing the ESOP to approve the purchase of Company stock at a price in excess of fair market value. Compl. ¶ 44. The Secretary further alleges that Mr. Zander and Mr. Thompson "failed to determine the prudence of the ESOP's investments as required by the ESOP's plan document and failed to ensure that the Company followed the requirements set forth in the ESOP's plan documents, . . . by causing the ESOP to pay more than adequate consideration and by failing to act with care, skill, prudence, and diligence as related to the Stock Purchase." *Id.* at ¶ 45. The Secretary also claims that Mr. Zander and Mr. Thompson are liable as co-fiduciaries for each other's alleged breaches of fiduciary duty, and that Mr. Zander is liable for failing to monitor Mr. Thompson. *Id.* at ¶ 46.

14

Alternatively, the Secretary claims that Mr. Zander is "subject to liability as a knowing participant in these fiduciary breaches." *Id.* ¶ 47.

In Count II, the Secretary alleges that Mr. Zander and Mr. Thompson engaged in non-exempt prohibited transactions under ERISA sections 406(a)(1)(A), (B), and (E) by causing the ESOP to engage in transactions that "it knew or should have known was a direct sale of property between a plan and a party in interest," by "authorizing the ESOP to accept a loan authorized by Jeffrey Zander," and by "causing the Plan to acquire employer securities." *Id.* at ¶ 49. The Secretary also again asserts that Mr. Zander and Mr. Thompson are liable for each other's alleged breaches, and that Mr. Zander is liable as a "knowing participant" in Mr. Thompson's alleged breaches. *Id.* at ¶¶ 52-53.

In Count III, the Secretary alleges that Mr. Zander and Mr. Thompson "engaged in transactions between the ESOP and themselves," in violation of ERISA section 406(b)(2)'s prohibited transaction rules, "by acting in any transaction on behalf of a party whose interests are adverse to those of the Plan." *Id.* at ¶ 54. The Secretary also repeats the claims that Mr. Zander and Mr. Thompson are liable for each other's alleged breaches, and that Mr. Zander is liable as a "knowing participant" in Mr. Thompson's alleged breaches. *Id.* at ¶¶ 56-57.

### III.    ARGUMENT

#### A.    The Breach of Fiduciary Duty Claims Against Mr. Zander Fail Because He Was Not a Fiduciary for the ESOP With Respect to the ESOP Transaction

The Secretary's claims against Mr. Zander for breach of fiduciary duty fail as a matter of law because Mr. Zander was not a fiduciary for the ESOP in connection with the ESOP Transaction.

ERISA recognizes two types of fiduciaries: named fiduciaries, who are so designated in the written instrument governing the plan, *see* 29 U.S.C. § 1102(a)(2), and "functional

15

fiduciaries," who become fiduciaries by virtue of the actions they take or the authority they assume on behalf of the plan, *see id*. § 1002(21).[5]  Thus, unless he or she is a named fiduciary, a person is a fiduciary only "*to the extent*" that he or she "exercises any discretionary authority or discretionary control respecting management of such plan" or "has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A) (emphasis added).  The "to the extent" language is critical because it indicates that a person can be a fiduciary for one purpose, without making him or her a fiduciary for all purposes.  *See, e.g.*, *Pegram v. Herdrich*, 530 U.S. 211, 225-26 (2000) ("In every case charging breach of ERISA fiduciary duty, then, the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint.").  Put another way, "fiduciary status is not an all or nothing concept," and, in assessing whether a defendant may be liable for breach of fiduciary duty, courts "must therefore 'ask whether a person is a fiduciary with respect to the particular activity in question.'"  *Briscoe v. Fine*, 444 F.3d 478, 486 (6th Cir. 2006) (quoting *Moench v. Robertson*, 62 F.3d 553, 561 (3d Cir. 1995)) (internal punctuation omitted); *see also Kerns v. Benefit Tr. Life Ins. Co.*, 992 F.2d 214, 217 (8th Cir. 1993) ("Even if [defendant] was an ERISA fiduciary with respect to claims handling, we agree with the district court that it was not a fiduciary with respect to the functions at issue in this case . . .").  In short, a defendant cannot be liable for breach of fiduciary duty unless he or she is a fiduciary with respect to the challenged conduct.

---

[5] The statute provides, in pertinent part, that "a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan."  29 U.S.C. § 1002(21)(A).  The Secretary's claims in this case do not implicate section 21(A)(ii) of the statute.

Here, each of the Secretary's breach of fiduciary duty claims against Mr. Zander is based on his alleged acts or omissions in connection with the ESOP Transaction. *See* Compl. ¶¶ 44-45. Accordingly, to be liable for any of those claims, Mr. Zander would have to have been acting as a fiduciary for the ESOP in connection with the ESOP Transaction. The undisputed facts show that he was not. Indeed, Mr. Zander was not a fiduciary for the ESOP in any respect. He was not named in the plan document as a fiduciary for the ESOP. *See generally* Ex. 23, Plan Document, Part 1 – Plan Documents Doc 4. He also was not a member of the committee that administered the ESOP and did not otherwise have any authority to administer the Plan. *See* Ex. 9, September 1, 2011 Unanimous Written Consent, Part 4 – ESOP Formation Doc 26(a), at 2; Ex. 2, Zander Dep. Tr. at 196:16-197:1. Nor is there any evidence in the record that Mr. Zander exercised any discretionary authority or control over the management of the ESOP or its assets, meaning that he was not a "functional fiduciary" under 29 U.S.C. § 1002(21)(A).

Even if the Secretary could show that Mr. Zander was a fiduciary for the ESOP in some respect (and he cannot), there can be no dispute that Mr. Zander was not a fiduciary for the ESOP *in connection with the ESOP transaction*. The record shows just the opposite. The Company appointed Mr. Thompson as the independent trustee for the ESOP for the express purpose of serving as the fiduciary representing the ESOP in connection with the ESOP Transaction. *See* Ex. 9, September 1, 2011 Unanimous Written Consent, Part 4 – ESOP Formation Doc 26(a), at 2-3. Mr. Thompson's appointment as the sole discretionary fiduciary for the ESOP in connection with the ESOP Transaction is confirmed in Mr. Thompson's engagement agreement and the trust agreement. *See* Ex. 11, August 31, 2011 Trustee Engagement Agreement at Thompson 000500; Ex. 37, September 1, 2011 Zander Group Holdings, Inc. Employee Stock Ownership Trust, Part 1 – Plan Documents Doc 5, at Sec. 2.3(e),

17

(r), Sec. 2.5, Sec. 3.1. Thus, it was Mr. Thompson alone – not Mr. Zander (or anyone else) – who had fiduciary responsibility to the ESOP in connection with the ESOP Transaction. *See Neil v. Zell*, 677 F. Supp. 2d 1010, 1022-23 (N.D. Ill. 2009) ("By appointing GreatBanc [the independent trustee] as fiduciary, the Board of Directors removed itself from direct responsibility for the ESOP's actions . . . . The board made a non-fiduciary decision as settlor to create the ESOP, then made a non-fiduciary business decision on Tribune Company's behalf to enter into the deal, and, finally, GreatBanc, acting on behalf of the ESOP, made an independent decision to also enter into the deal."); *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan Enters., Inc.*, 793 F.2d 1456, 1460 (5th Cir. 1986) (holding that the principal shareholder of company whose stock was partially owned by a profit sharing trust could only be a fiduciary "with respect to the sale of the trust's stock" if he "controlled the trustees' decision to sell").

This approach was wholly logical and appropriate because, far from representing the ESOP in the ESOP Transaction as a fiduciary, Mr. Zander was on the ***opposite side*** of the transaction from the ESOP. *See Neil*, 677 F. Supp.2d at 1021 ("If merely proposing a deal to an ESOP were sufficient to create a fiduciary duty, then *anyone* proposing a deal to an ESOP would have [a] conflict of interest . . . adopting Plaintiffs' argument would make it impossible for anyone to negotiate a transaction with an ESOP for fear that it might be deemed unfavorable to the plan beneficiaries"). Indeed, the ability to delegate fiduciary responsibility for an ESOP to an independent trustee, so as to remove the influence of senior corporate officials who are typically the selling shareholders in ESOP transactions, is essential to the legislative intent and statutory design of ERISA. *See Henry v. Champlain Enters., Inc.*, 288 F. Supp. 2d 202, 222 (N.D.N.Y. 2003) (it "may reap incurable conflicts of interest and effectively paralyze the sale of stock to employees of closely held corporations" if "seller defendants . . . in their capacities as . .

18

. directors, could be ESOP fiduciaries at the same time they sat across the table from the ESOP as sellers").

Because Mr. Zander was not a fiduciary for the ESOP, all of the Secretary's breach of fiduciary duty claims against him fail as a matter of law, and the Court should grant summary judgment on those claims. The fact that Mr. Zander was not a fiduciary also requires disposal of most of the Secretary's other claims against him (the duty to monitor, co-fiduciary liability, and prohibited transaction claims), as discussed in the sections to follow.

**B.      Mr. Zander Did Not Have a Duty to Monitor Mr. Thompson**

In addition to the claims against Mr. Zander for breach of the fiduciary duties of prudence and loyalty in connection with the ESOP Transaction, the Secretary asserts in Count I that Mr. Zander "is also liable for his failure to monitor Thompson." Compl. ¶ 46. This claim is not well defined – the only allegation supporting the claim is that "Zander failed to monitor Thompson and ensure that Thompson undertook to read, understand, and analyze the [2nd Generation] Valuation Report." *Id.* ¶ 43. The Secretary's monitoring claim fares no better than the other breach of fiduciary duty claims. Mr. Zander had no fiduciary duty to monitor Mr. Thompson as a matter of law because he did not appoint Mr. Thompson as the ESOP's trustee.

ERISA recognizes that when a person appoints a fiduciary, there is a limited duty for the appointing fiduciary to monitor the appointee. 29 C.F.R. § 2509.75-8 at FR-17 (discussing the ongoing responsibilities of a fiduciary who has appointed trustees or other fiduciaries). That duty to monitor applies *only* to the person or entity that appoints the fiduciary in question. *See Henry*, 288 F. Supp. 2d at 222 (dismissing fiduciary duty claims based on an alleged duty to monitor against an ESOP administrative committee member and company board member who was individually without power to appoint the trustee); *In re WorldCom, Inc.*, 263 F. Supp. 2d

19

745, 759-60 (S.D.N.Y. 2003) (rejecting argument that authority to appoint and remove by itself creates a duty to monitor appointee's performance).

Here, Mr. Zander had no duty to monitor Mr. Thompson as a matter of law, because Mr. Zander did not appoint Mr. Thompson as trustee for the ESOP. Rather, the record is clear that the Company appointed Mr. Thompson through a resolution of the Company's board of directors. Ex. 9, September 1, 2011 Unanimous Written Consent, Part 4 – ESOP Formation Doc 26(a), at 2-3 ("WHEREAS the Company must appoint an individual or institution to serve as Trustee . . . NOW, THEREFORE, BE IT RESOLVED, that Stephen M. Thompson . . . is hereby appointed to serve as Plan Trustee. . . .").

The fact that Mr. Zander signed Mr. Thompson's engagement letter does not change the analysis because Mr. Zander signed the letter in his capacity as the President of the Company, not in his personal capacity. Mr. Zander was appointed the President of the Company on July 7, 2011. Ex. 10, Organizational Consent of the Board of Directors of Zander Group Holdings, Inc. dated July 7, 2011 at Thompson 002214-16. The board of directors' resolution is clear that it authorized Mr. Zander to sign Mr. Thompson's engagement letter on behalf of the Company: "[T]he President of the Company is hereby authorized and directed to sign *on behalf of the Company* the Trustee Engagement Agreement. . . ." Ex. 9, September 1, 2011 Unanimous Written Consent, Part 4 – ESOP Formation Doc 26(a), at 3 (emphasis added); *see also* Ex. 11, August 31, 2011 Thompson Engagement Agreement at Thompson 000500-Thompson 000508.[6] Thus, signing the engagement letter did not impose fiduciary status on Mr. Zander – any duty to

---

[6] That Mr. Zander may have signed Mr. Thompson's engagement letter the day before the effective date of the board resolution does not change the result. The board was simply ratifying and memorializing the engagement. *See* Ex. 12, Eagle Dep. Tr. at 85:13-25.

monitor Mr. Thompson remained with the Company, which appointed him.[7]  *See, e.g.*, 29 C.F.R.

§ 2509.75-8 at D–5 (officer of company sponsoring employee benefit plan is not a fiduciary with

respect to the plan "solely by reason of holding such office"); *Sasso v. Cervoni*, 985 F.2d 49, 50

(2d Cir. 1993) ("[A]n individual is not liable for corporate ERISA obligations solely by virtue of

his role as officer, shareholder, or manager.") (collecting cases); *Henry*, 288 F. Supp. 2d at 221

(declining to impose fiduciary status on an individual board member where the power to appoint

the Trustee was vested in the company's Board of Directors); *Sommers Drug Store*, 793 F.2d at

1460 ("[T]he court should have instructed the jury that it could not infer that the defendants

[were fiduciaries] merely from the defendants' status . . . as an officer and director and principal

shareholder of the employer . . . ."); *Briscoe*, 444 F.3d at 487 (holding that directors are not

fiduciaries based solely on their status as directors).  Neither did Mr. Zander's status as a

member of ZGH's board of directors render him an appointing fiduciary with a duty to monitor

Mr. Thompson.  *See id*.

      Even if the Secretary could prove that Mr. Zander had a fiduciary duty to monitor Mr.

Thompson, there is no evidence that Mr. Zander breached such a duty.  Courts have made clear

that the duty to monitor is limited.  It does not "expose[] the appointing fiduciary to open-ended

liability.  On the contrary, courts have properly taken a restrictive view of the scope of this duty

and its attendant potential for liability."  *Coyne & Delany Co. v. Selman*, 98 F.3d 1457, 1466

n.10 (4th Cir. 1996).  Consistent with the basic design of ERISA, the duty to monitor is

understood to involve reviewing the actions of appointees *after* they have been taken.  The

Secretary's own regulations describe the duty that way:

---

[7] The same analysis applies to JJZ, Inc.'s initial engagement of Mr. Thompson, i.e., Mr. Zander did not personally appoint Mr. Thompson; rather, he signed the engagement agreement in his capacity as an officer of the corporation. *See* Ex. 8, May 22, 2011 Trustee Engagement Agreement at Thompson 000509-Thompson 000515; Ex. 2, Zander Dep. Tr. 190:19-191:3, 193:15-22.

At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the terms of the plan and statutory standards, and satisfies the needs of the plan.

29 C.F.R. § 2509.75-8 at FR–17. Thus, the Secretary's theory that Mr. Zander was, in effect, required to look over Mr. Thompson's shoulder and monitor his due diligence and negotiation process is baseless. The Seventh Circuit, for example, rejected an interpretation of the duty to monitor "that would require every appointing Board member to review all business decisions" of fiduciaries they appoint, noting that the plaintiffs' arguments to that effect "border[ed] on frivolous." *Howell v. Motorola, Inc.*, 633 F.3d 552, 573 (7th Cir. 2011). The court cautioned that such a standard "would defeat the purpose of having trustees appointed to run a benefits plan in the first place." *Id.* Imposing such an intrusive duty to monitor would be particularly inappropriate in the case of an ESOP transaction like the one at issue in which the selling shareholder – who is on the opposite side of the transaction as the ESOP's trustee – is alleged to have appointed the trustee.

In this case, as described in Section III.E below, Mr. Thompson and his representatives engaged in a thorough due diligence process on behalf of the ESOP in which they requested and received numerous documents and information from Mr. Zander and the Zander Business, made multiple site visits to the business's offices and interviewed management, and actively negotiated the terms of the proposed ESOP Transaction. Thus, there was nothing to suggest to Mr. Zander that Mr. Thompson was failing to appropriately discharge his duties as the trustee of the ESOP, and no duty to monitor imposed on Mr. Zander an obligation to further investigate or to cause Mr. Thompson to do something more or different than he was doing. Put another way, there were no facts to put Mr. Zander on notice of any wrongful conduct by Mr. Thompson. *See Newton v. Van Otterloo*, 756 F. Supp. 1121 (N.D. Ind. 1991) (directors did not breach fiduciary

22

duty by failing to properly monitor plan administrator because there was "nothing that could be deemed to have put the Board members on notice of possible misadventure by their appointees").

Finally, even if the Secretary were correct that the legal standard required Mr. Zander to look over Mr. Thompson's shoulder and "ensure that Thompson undertook to read, understand, and analyze the [2nd Generation] Valuation Report," the undisputed facts show that Mr. Thompson did so; thus, Mr. Zander could not have failed to monitor him in that regard. Mr. Thompson was an experienced ESOP trustee who had reviewed many valuation reports in his career. Mr. Thompson reviewed and understood 2nd Generation's valuation report and went over it in detail with 2nd Generation. *See* Ex. 7, Thompson Dep. Tr. at 158:2-11, 162:6-163:15, 171:1-10, 72:12-75:1, 211:10-212:12, 245:5-19; Ex. 12, Eagle Dep. Tr. at 48:17-49:10; Ex. 14, Holmes Dep. Tr. at 211:16-25. There is no evidence to the contrary. Importantly, however, as discussed below, Mr. Thompson did not base his decision to approve the ESOP Transaction on 2nd Generation's valuation report. Although he reviewed and considered that report, Mr. Thompson performed his own, independent valuation analysis that he relied upon in determining that the ESOP was paying no more than fair market value for ZGH's stock. *See* Ex. 12, Eagle Dep. Tr. at 48:17-49:10; Ex. 7, Thompson Dep. Tr. at 162:6-163:15, 72:12-75:1, 211:10-212:12, 245:5-19; Ex. 16, August 2011 Thompson "Test of Value – DCF" at Thompson 001068-71; Ex. 17, August 2011 Thompson "Test of Value – 2nd Gen DCF" (Thompson Ex. 42).[8]

C. **Mr. Zander Is Not Liable as a Co-Fiduciary for Mr. Thompson's Alleged Breaches of Fiduciary Duty**

The Secretary claims that Mr. Zander, as Mr. Thompson's co-fiduciary, is liable under ERISA section 405 for Mr. Thompson's alleged breaches of fiduciary duty. Specifically, the

---

[8] As explained in Section III.F below, the Secretary has failed to assert any claims against ZGH. If, however, the Court were to conclude that the Secretary has articulated a duty to monitor claim against ZGH, ZGH did not breach any duty to monitor Mr. Thompson for the same reasons that Mr. Zander did not breach such a duty.

23

Complaint asserts that Mr. Zander "(a) participated in [Mr. Thompson's] breaches, (b) enabled [Mr. Thompson] to breach his duties as related to the Stock Purchase, (c) knew or should have known that [Mr. Thompson] had breached his duty, and (d) failed to make reasonable efforts under the circumstances to remedy the breaches." Compl. ¶¶ 46, 52, 56. These claims fail as a matter of law. By ERISA's plain terms, co-fiduciary liability applies only to fiduciaries. 29 U.S.C. § 1105(a). Thus, as a threshold matter, because Mr. Zander was not a fiduciary for the ESOP, he cannot be liable as a co-fiduciary. That ends the matter.[9]

But, even if Mr. Zander was a fiduciary for the ESOP, the undisputed facts show that the Secretary cannot satisfy the elements of co-fiduciary liability under ERISA.[10] That is because Mr. Zander did not have actual knowledge of Mr. Thompson's alleged breaches, a necessary element of co-fiduciary liability. Courts in this Circuit have held that to establish co-fiduciary liability, "it [is] necessary for Plaintiffs to prove *actual knowledge* by the co-fiduciaries of the other fiduciary's breach." *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 833 (S.D. Ohio 2004) (emphasis added); *see also Banks v. Healthways, Inc.*, No. 3:08-0734, 2009 WL 211137, at *6

---

[9] Even if Mr. Zander was a fiduciary for the ESOP in some respect (and he was not), the Secretary's claims still fail because a co-fiduciary may not be liable for breaches that fall outside the scope of his or her own duties. *See Brandt v. Grounds*, 502 F. Supp. 598, 599 (N.D. Ill. 1980) (ERISA "does not create liability for a co-fiduciary in a situation where the wrongdoing is wholly beyond the control of the co-fiduciary and outside the scope of responsibility as defined by the statue."), *aff'd*, 687 F.2d 895 (7th Cir. 1982). The Secretary's claims against Mr. Thompson all concern the ESOP Transaction. Because, as shown above, Mr. Zander was not the fiduciary for the ESOP in connection with the ESOP Transaction, he cannot be liable for another fiduciary's breaches in connection with the ESOP Transaction. For the same reason, Mr. Zander cannot be liable as a co-fiduciary for Mr. Thompson's alleged violations of the prohibited transaction rules in Counts II and III of the Complaint, which are all based on acts and omissions concerning the ESOP Transaction.

[10] ERISA provides for co-fiduciary liability in 29 U.S.C. § 1105(a), as follows:

"[A] fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in the following circumstances:
  (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
  (2) if, by his failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
  (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

24

(M.D. Tenn. Jan. 28, 2009) ("[S]ection [405] . . . requires actual knowledge by the co-fiduciary."); *Ellis v. Rycenga Homes, Inc.*, 484 F. Supp. 2d 694, 712 (W.D. Mich. 2007) ("Section 405[] . . . on its face, requires actual knowledge of a breach by a co-fiduciary as a prerequisite to liability."). "Absent such established knowledge, the defendants cannot be liable," even where the court "feels strongly that . . . the fiduciaries *should* have known of the breaches and taken steps to remedy them." *Davidson v. Cook*, 567 F. Supp. 225, 237 (E.D. Va. 1983). In that regard, section 405's actual knowledge requirement "contrasts with other provisions of ERISA, in which Congress established a lower standard of scienter – 'knows or should know.'" *Ellis*, 484 F. Supp. 2d at 712. Given the "clarity" of section 405's language, "courts hold that actual knowledge is required and that constructive knowledge will not do." *Id.* at 712. Accordingly, without facts sufficient to establish an alleged co-fiduciary's knowledge of another fiduciary's breach, a claim for co-fiduciary liability cannot stand. *See, e.g.*, *Henry*, 288 F. Supp. 2d at 224 (dismissing claim where although the court expressed "[s]ympathy . . . for plaintiff's apparent argument that [defendant] was a member of a conspiracy to overcharge the ESOP," plaintiff failed to demonstrate defendant's actual knowledge of any breach).

Here, the Secretary claims that Mr. Thompson breached fiduciary duties to the ESOP by: (1) "Causing the ESOP to approve the purchase of the Company's Stock from Toxaway Trust at a price in excess of and not reflective of fair market value"; and (2) "Relying on the conclusions in 2nd Gen.'s Valuation Report and 'bring forward' letter without ensuring that 2nd Gen.'s advice and [his] reliance thereupon was reasonably justified under the circumstances." Compl. ¶ 44. The undisputed facts show that Mr. Zander did not have actual knowledge of any of these alleged breaches. Mr. Zander was the selling shareholder on the other side of the ESOP Transaction from Mr. Thompson. He was not involved in Mr. Thompson's decision-making

25

process for approving the ESOP Transaction.  *See* Ex. 2, Zander Dep. Tr. at 221:14-21; Ex. 7, Thompson Dep. Tr. at 164:7-14; Ex. 12, Eagle Dep. Tr. at 51:21-52:11.  Moreover, contrary to the Secretary's allegations, although Mr. Thompson reviewed and understood 2nd Generation's valuation report, he did *not* base his decision to approve the ESOP Transaction on that report.[11] *See* Ex. 12, Eagle Dep. Tr. at 48:17-49:10; Ex. 7, Thompson Dep. Tr. at 162:6-163:15, 72:12-75:1, 211:10-212:12, 245:5-19.  Instead, Mr. Thompson performed his own valuation of the Company's stock and determined that 2nd Generation's valuation – and the proposed purchase price – were *below* fair market value, particularly in light of the Company's improved performance in 2011.  *See id.*; *see also* Ex. 16, August 2011 Thompson "Test of Value – DCF" at Thompson 001068-71; Ex. 17, August 2011 Thompson "Test of Value – 2nd Gen DCF" (Thompson Ex. 42).  As explained above, Mr. Thompson was a certified public accountant who had substantial experience with valuations related to ESOP transactions.  It was his typical practice when serving as the transactional trustee for an ESOP to develop his own, independent valuation of the stock the ESOP would potentially purchase.  Ex. 12, Eagle Dep. Tr. at 32:10-24, 48:17-49:10.  That is what Mr. Thompson did in this case.  He reviewed the Company's financial information and developed work papers in which he valued the Company's stock under various scenarios and assumptions.  *See* Ex. 16, August 2011 Thompson "Test of Value – DCF" at Thompson 001068-71; Ex. 17, August 2011 Thompson "Test of Value – 2nd Gen DCF" (Thompson Ex. 42).  It is undisputed that Mr. Zander was never provided Mr. Thompson's

---

[11] Even if it were true that Mr. Thompson relied on 2nd Generation's valuation, Mr. Zander did not have knowledge of any alleged flaws in the valuation or that it was unreasonable for Mr. Thompson to rely on it.  As explained previously, Mr. Zander is not a valuation professional and had no previous experience with ESOP valuations or the methodologies used by 2nd Generation.  Mr. Thompson, on the other hand, was an experienced ESOP trustee and a certified public accountant.  Mr. Zander had no reason to question Mr. Thompson's ability to review and understand the valuation.  Moreover, as discussed below, Mr. Zander had a good faith, reasonable belief that 2nd Generation's valuation was *lower* than fair market value, *not* higher.

independent valuation of the Company's stock or his work papers.  Ex. 7, Thompson Dep. Tr. at 164:7-14.

Additionally, Mr. Zander did not have actual knowledge that the ESOP allegedly purchased ZGH's stock for more than fair market value.  To the contrary, it is undisputed that Mr. Zander had a good faith belief that the purchase price was conservative, given that the projections used by 2nd Generation were lower than the Company's historical growth rate and that 2nd Generation's valuation did not take into account the Company's strong 2011 performance.  *See* Ex. 2, Zander Dep. Tr. at 39:3-20, 92:8-93:6, 102:7-14, 223:4-18, 225:15-24, 233:13-25; 244:10-245:2.  In short, it is undisputed that Mr. Zander had no knowledge of any alleged breach by Mr. Thompson, let alone did he participate in or enable such a breach that he did not know about.  The Court should grant summary judgment to Mr. Zander on the Secretary's co-fiduciary liability claims.

### D.    The Prohibited Transaction Claims Against Mr. Zander Fail Because Mr. Zander Was Not a Fiduciary for the ESOP and Did Not Cause the ESOP to Enter into the Alleged Transactions

The Secretary's prohibited transaction claims against Mr. Zander in Counts II and III fail as a matter of law because the undisputed facts show that Mr. Zander was not a fiduciary who caused the alleged transactions, as ERISA requires to impose liability.

Count II of the Complaint asserts prohibited transaction claims under 29 U.S.C. § 1106(a), while Count III asserts claims under 29 U.S.C. § 1106(b).  Specifically, in Count II, the Secretary claims that Mr. Zander and Mr. Thompson engaged in prohibited transactions in three ways: (1) "By causing the ESOP to engage in transactions that it knew or should have known was a direct sale of property between the plan and a party in interest;" (2) "By authorizing the ESOP to accept a loan authorized by Jeffrey Zander, as trustee and beneficiary of the Toxaway Trust;" and (3) "By causing the Plan to acquire employer securities."  Compl. ¶ 49.  And, in

Count III, the Secretary claims that Mr. Zander and Mr. Thompson violated ERISA's prohibited transaction rules by "engag[ing] in transactions between the ESOP and themselves." *Id.* ¶ 54.

ERISA, by its plain terms, limits liability for the Secretary's prohibited transaction claims to the ESOP's fiduciaries. Under 29 U.S.C. § 1106(a), "[a] ***fiduciary*** with respect to a plan shall not ***cause*** the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect . . . (A) sale or exchange, or leasing, of any property between the plan and a party in interest; (B) lending of money or other extension of credit between the plan and a party in interest; . . . (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title." (emphasis added). And, 29 U.S.C. § 1106(b) provides in relevant part that "[a] ***fiduciary*** with respect to a plan shall not . . . (2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries." (emphasis added); *see also Borroughs Corp. v. Blue Cross Blue Shield of Michigan*, No. 11-12557, 2012 WL 3887438, at *5 (E.D. Mich. Sept. 7, 2012) ("[C]laims for . . . prohibited transactions . . . may only be brought against a fiduciary within the meaning of ERISA.").

Even if the Secretary could otherwise satisfy the elements of his prohibited transaction claims, each claim fails as a matter of law against Mr. Zander because he was not a fiduciary for the ESOP and did not cause the ESOP to enter into any of the transactions complained of. As demonstrated above, Mr. Zander was not a fiduciary for the ESOP in any respect. *See supra* Section III.A. Accordingly, there can be no valid prohibited transaction claims against him under 29 U.S.C. § 1106(a) or (b), and he is entitled to summary judgment on all such claims in Counts II and III of the Complaint.

28

Moreover, as to the prohibited transaction claims in Count II, those claims against Mr. Zander fail as a matter of law for the additional reason that he did not cause the ESOP to engage in any transactions. As noted above, only the fiduciary who ***causes*** the prohibited transaction can be liable under 29 U.S.C. § 1106(a). As a non-fiduciary selling shareholder, Mr. Zander did not have the authority to cause the ESOP to do anything, and he did not cause the ESOP to enter into the ESOP Transaction or to accept a loan. To the contrary, it is undisputed that Mr. Thompson approved the ESOP Transaction on behalf of the ESOP in which the ESOP purchased the ZGH stock and signed the relevant agreements on behalf of the ESOP. Specifically, Mr. Thompson signed the stock purchase agreement on behalf of the ESOP, which caused the ESOP to purchase the Company's stock. *See* Ex. 21, Stock Purchase Agreement (Eagle Ex. 22) at 43. Likewise, it was Mr. Thompson who authorized the ESOP to accept the loan that financed the ESOP Transaction, and Mr. Thompson signed the loan agreement on behalf of the ESOP, as well as the ESOP's promissory note. *See* Ex. 25, ESOP Loan and Pledge Agreement at Thompson 001776-Thompson 001783; Ex. 38, Exempt Loan Promissory Note at Thompson 001784-Thompson 001786. In short, because it was not Mr. Zander but rather Mr. Thompson, the trustee, who was the fiduciary who caused the alleged prohibited transactions, all such claims against Mr. Zander fail as a matter of law.[12] *See Hans v. Tharaldson*, No. 3:05-CV-115, 2011 WL 7179644, at *18 (D.N.D. Oct. 31, 2011) (dismissing prohibited transaction claims against selling shareholders where there was no "serious[] dispute" that the trustee, "along with professionals retained by him, was responsible for structuring the transactions and the

---

[12] To the extent that the Secretary also separately claims in Counts II and III that Mr. Zander breached fiduciary duties under 29 U.S.C. § 1104(a) by causing alleged prohibited transactions, those claims are duplicative of the prohibited transaction claims, themselves, and fail for the same reasons. *See Henry*, 288 F.Supp.2d at 226 (dismissing claims against selling shareholders that they breached fiduciary duties by engaging in prohibited transaction because sellers were not fiduciaries responsible for causing the ESOP to overpay for the stock it purchased).

29

Nonfiduciary Selling Shareholders signed the paperwork based on [the trustee's] representations or recommendations"); *Keach v. U.S. Tr. Co. N.A.*, 313 F. Supp. 2d 818, 870–71 (C.D. Ill. 2004) (holding that selling shareholders "could not have breached any fiduciary duty by causing the ESOP to enter into a transaction prohibited by ERISA § 406, because it was [the trustee], and not these individuals, that made the independent decision that caused the ESOP to purchase shares in" the company), *aff'd sub nom. Keach v. U.S. Tr. Co.*, 419 F.3d 626 (7th Cir. 2005).[13]

### E.  Mr. Zander Is Not Liable as a Non-Fiduciary Party in Interest Because He Did Not Knowingly Participate in Mr. Thompson's Alleged Breaches

As an alternative to the claims against Mr. Zander for breach of fiduciary duty, co-fiduciary liability, and prohibited transaction violations, the Secretary seeks to hold Mr. Zander liable as a non-fiduciary knowing participant in Mr. Thompson's alleged breaches.  The Complaint asserts that Mr. Zander "had actual or constructive knowledge" of Mr. Thompson's alleged breaches and is thus "subject to liability as a knowing participant" in those breaches. Compl. ¶¶ 47, 53, 57.  This claim fares no better than the Secretary's fiduciary claims.  Because Mr. Zander did not have actual or constructive knowledge of any alleged breach by Mr. Thompson and did not participate in any alleged breach, he cannot be liable under a non-fiduciary liability theory.

The Supreme Court has held that a non-fiduciary "party in interest" may be liable under ERISA section 406(a)(1)(A) in connection with a fiduciary breach in limited circumstances where the non-fiduciary had "actual or constructive knowledge of the circumstances that rendered the [underlying] transaction unlawful."  *Harris Tr. & Sav. Bank v. Salomon Smith*

---

[13] Even if Mr. Zander was a fiduciary who caused the alleged prohibited transactions (and he is not), if the Court denies this motion, the Zander Defendants will demonstrate at trial that the ESOP Transaction falls within an exemption to the prohibited transaction rules because the ESOP paid no more than "adequate consideration" for the ZGH stock it purchased.  *See* 29 U.S.C. §1108(e).  But, the Court need not reach the exemption to grant summary judgment to Mr. Zander on prohibited transaction claims for the reasons shown above.

*Barney, Inc.*, 530 U.S. 238, 251 (2000). Caselaw involving claims of non-fiduciary liability against a selling shareholder in an ESOP transaction is instructive. In *Hans v. Tharaldson*, the court found that where a plaintiff establishes a breach of duty on the part of a fiduciary, a non-fiduciary selling shareholder may invoke "'the substantive equivalent of a modified bona fide purchaser defense by establishing that [he or she] gave value for the trust property.'" 2011 WL 7179644, at *16 (quoting *Keach v. US Trust Co., N.A.*, 256 F. Supp. 2d 818, 822 (C.D. Ill. 2003)). "If the nonfiduciaries are able to make such a showing, a presumption of good faith attaches, and the burden shifts back to the plaintiff to establish that the nonfiduciary defendants acted 'in bad faith or had actual or constructive notice of the circumstances that rendered the transaction unlawful.'" *Id.* (quoting *Keach*, 256 F. Supp. 2d at 822). Under these authorities, a defendant is entitled to the presumption of good faith where plaintiffs do "not contest that the stock purchase transactions were for 'value'" – *i.e.*, "not gratuitous" and involving "consideration that was more than nominal." *Keach*, 256 F. Supp. 2d at 822.

Here, although the Secretary maintains that the ESOP overpaid for the Company's stock, he does not allege that the stock purchased had only a nominal value. *See* Ex. 39, The Secretary's First Amended Rule 26 Initial Disclosures, at 2 (alleging that the difference between "fair market value and the price paid by the ESOP was $11,767,280"). Mr. Zander accordingly is "entitled to a presumption of good faith and lack of knowledge unless [the Secretary is] able to rebut that presumption." *Keach*, 256 F. Supp. 2d at 822.

The Secretary cannot rebut the presumption. Indeed, under similar circumstances, the *Hans* court disposed of claims against non-fiduciary selling shareholders on summary judgment where there was "simply a lack of evidence to support a conclusion that they had actual knowledge of the circumstances that the stock purchase could be unlawful for failure to provide

31

'adequate consideration.'" *Hans*, 2011 WL 7179644, at \*17. In particular, the court noted a lack of evidence to suggest that the shareholders were afforded "access to the same information that was available to . . . the plan fiduciary." *Id.* at \*16. The court also rejected plaintiff's argument that the sellers "should have questioned the form of the transaction or . . . known their reliance on . . . an independent ESOP valuation professional was unreasonable." *Id.* at \*17. Given the "complex valuation principles" involved, the "alleged unlawfulness would not be apparent to lay persons." *Id.* The court reasoned that holding otherwise would "require counterparties to a transaction[] with an ESOP plan to monitor for compliance with ERISA's intricate details – something the Supreme Court in *Harris Trust* cautioned against." *Id.*

Additionally, in *Keach*, the court rejected a claim against a non-fiduciary selling shareholder where there was "no indication that he was involved in the [ESOP's] decision making processes" and the "only indication of his involvement in the record is that he would provide financial information to [the valuation firm] and others involved in the due diligence process . . . upon request." 256 F. Supp. 2d at 827.

Here, the undisputed facts show that Mr. Zander did not know of an alleged breach by Mr. Thompson and did not have any reason to know. As discussed above, Mr. Zander was not involved in Mr. Thompson's decision-making process in which he evaluated and approved the ESOP Transaction. Mr. Zander was the selling shareholder on the other side of the transaction. He did not have access to Mr. Thompson's independent valuation of ZGH's stock or his work papers – the information that Mr. Thompson used in determining that the proposed purchase price for the stock was reasonable. *See* Ex. 7, Thompson Dep. Tr. at 164:7-14.

Nor did Mr. Zander have any reason to think that Mr. Thompson's due diligence and evaluation process was insufficient, let alone so flawed that it violated ERISA. Mr. Thompson

and Mr. Eagle were highly experienced with ESOP transactions. *See* Ex. 7, Thompson Dep. Tr. at 13:13-18:11, 211:2- 213:15; Ex. 12, Eagle Dep. Tr. at 10:6-13:25. Mr. Thompson's representatives requested, and Mr. Zander and the Company provided, a significant amount of material and information during the due diligence process. *See* Ex. 2, Zander Dep. Tr. at 203:19- 205:25; Ex. 14, Holmes Dep. Tr. at 124:7-125:24; Ex. 12, Eagle Dep. Tr. at 17:20-18:2. Additionally, Mr. Thompson and 2nd Generation made multiple visits to the Zander Business's offices and had multiple meetings with management. *See* Ex. 2, Zander Dep. 203:19-205:25; Ex. 3, 2nd Gen. Report at Thompson 000141; Ex. 15, Bring Forward Letter at 2NDGEN001057; Ex. 7, Thompson Dep. Tr. at 72:12-75:1, 76:14-77:4. Mr. Eagle also zealously negotiated multiple terms of the proposed ESOP Transaction on behalf of Mr. Thompson and the ESOP. *See* Ex. 12, Eagle Dep. Tr. at 20:2-20, 24:13-21, 27:2-14, 31:19-32:3, 36:3-39:14, 40:12-44:4; Ex. 2, Zander Dep. Tr. at 180:10-181:7.

Moreover, Mr. Zander did not know or have any reason to believe that the ESOP's purchase price was more than fair market value. As demonstrated above, Mr. Zander had a good faith belief that the purchase price was *less than* fair market value. *See* Section III.C, *supra*. Mr. Zander is not a valuation professional, and he had no reason to question the validity of 2nd Generation's valuation methodologies or conclusions (though, as noted above, Mr. Thompson's decision to approve the ESOP Transaction was not based on 2nd Generation's report). To the contrary, the financial projections used in 2nd Generation's report forecasted a lower rate of growth than the Company's actual rate of growth in the years leading up to the ESOP Transaction. *See* Section II.A, *supra*. And, 2nd Generation's valuation did not take into account that the Company had performed even better in the months in 2011 shortly before the

33

transaction. *See* Ex. 3, 2nd Gen. Report at Thompson 000165. These undisputed facts supported Mr. Zander's reasonable belief that the purchase price was fair and even conservative.

In short, far from "knowingly participating" in a breach by Mr. Thompson, Mr. Zander had nothing to do with Mr. Thompson's decision-making process in approving the ESOP's purchase of the ZGH stock, and did not know or have any reason to believe that Mr. Thompson violated ERISA.

### F. The Secretary Fails to State any Cause of Action Against Zander Group Holdings

Although the Complaint names ZGH as a defendant, the Secretary has failed to allege any facts that could support a cause of action against ZGH. Indeed, the Secretary does not make any claims against ZGH whatsoever in the Compliant and seeks no relief or remedies against ZGH. The Court, therefore, should grant summary judgment to ZGH.

"It is a basic pleading essential that a plaintiff attribute factual allegations to particular defendants." *Harris v. Forrester*, No. 3:18-CV-00120, 2018 WL 2669989, at *3 (E.D. Tenn. June 4, 2018). Accordingly, complaints that contain "no specific allegations of misconduct against [a defendant]" must be dismissed as to that defendant. *Rollen v. Horton*, No. 3:08-0227, 2008 WL 2997512, at *1 (M.D. Tenn. July 31, 2008). Courts also dismiss complaints against defendants where it is "difficult to ascertain the exact claims against the[m]." *W. Exp., Inc. v. Pike*, No. 3:05-0761, 2006 WL 208879, at *1 (M.D. Tenn. Jan. 26, 2006) (dismissing claim as to named defendant company where Plaintiff "ma[de] no allegations in the Complaint about the allegedly wrongful conduct of [the company]").

Here, none of the Complaint's three counts assert any claims against ZGH, and the prayer for relief requests no relief against ZGH. Compl. ¶¶ 44-57; *Donnell v. Alden*, No. 3:11-0105, 2011 WL 1099976, at *2 (M.D. Tenn. Mar. 23, 2011) (dismissing complaint against named

defendants against whom plaintiff sought no relief). Nor are there any other allegations in the body of the Complaint that make out a cause of action against ZGH. Although certain allegations reference the Company's alleged legal status as a "functional fiduciary to the Plan" and a "party in interest" under ERISA, Compl. ¶¶ 16, 20, there are no factual allegations of any wrongdoing by ZGH. The only other references to the ZGH in the Complaint simply point out the Company's role in the structure of the ESOP Transaction. *See, e.g.* Compl. ¶¶ 8-9, 13-15, 21.

Because the Complaint is "devoid of any acts or omissions attributable to [the Company]," *Doe v. Maximus*, No. 3:10-00411, 2010 WL 4789963, at *5 (M.D. Tenn. Nov. 15, 2010), the Secretary has failed to make out any claim against ZGH, and the Court should grant summary judgment to ZGH.[14]

## IV. CONCLUSION

For the foregoing reasons, the Zander Defendants respectfully request that the Court grant summary judgment in their favor on all claims against them.

Dated: May 23, 2019                    Respectfully submitted,

                                       *s/ Lars C. Golumbic*
                                       Lars C. Golumbic (admitted *pro hac vice*)
                                       Sean C. Abouchedid (admitted *pro hac vice*)
                                       GROOM LAW GROUP, CHARTERED
                                       1701 Pennsylvania Ave., NW, Ste. 1200
                                       Washington, D.C. 20006
                                       Tel: (202) 861-6615; Fax: (202) 659-4503
                                       Email:  lgolumbic@groom.com
                                               sabouchedid@groom.com

                                       Mark E. Stamelos (TN 021021)
                                       FORD HARRISON LLP

---

[14] To the extent the Court discerns a claim against ZGH in the Complaint for co-fiduciary liability for Mr. Zander's alleged breaches of fiduciary duty and/or prohibited transactions, or a claim that ZGH knowingly participated in alleged breaches by Mr. Zander, the Court should grant summary judgment to ZGH because, as demonstrated above, the Secretary has no valid claims against Mr. Zander. Likewise, even if the Court were to find that ZGH had a duty to monitor Mr. Thompson, ZGH has not breached such a duty to monitor for the same reasons Mr. Zander did not breach such a duty to monitor, as described in Section III.B.

35

150 3rd Avenue South, Ste. 2010
Nashville, TN 37201
Tel: (615) 574-6700; Fax: (615) 574-6701
Email: mstamelos@fordharrison.com

*Counsel for Defendants Jeffrey J. Zander and
Zander Group Holdings, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 23, 2019, a true and correct copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS JEFFREY J. ZANDER AND ZANDER GROUP HOLDINGS, INC.'S MOTION FOR SUMMARY JUDGMENT was served via the Court's electronic case filing system upon the following:

H. Douglas Hinson
Emily Hootkins
Alston & Bird LLP
One Atlantic Center
1201 W. Peachtree Street
Atlanta, GA 30309-3424
Tel: (404) 881-7590
Fax: (404) 253-8663
dhinson@alston.com
emily.hootkins@alston.com

Patrick C. DiCarlo
The DiCarlo Law Firm
1230 Peachtree Street, Suite 1900
Atlanta, GA 30309
Tel: (404) 942-3737
Fax: (404) 942-3737
pat@dicarlolawfirm.com

Matthew C. Lonergan
Bradley Arant Boult Cummings LLP
1600 Division Street, Suite 700
Nashville, TN 37203-0025
Tel: (615) 244-2582
Fax: (615) 252-6322
mlonergan@babc.com

*COUNSEL FOR DEFENDANT*
*STEPHEN M. THOMPSON*

Dane Steffenson
Willow Eden Fort
U.S. Department of Labor
Office of the Solicitor
618 Church Street, Suite 230
Nashville, TN 37219-2456
Tel: (615) 781-5330
Fax: (615) 781-5321
steffenson.dane@dol.gov
fort.willow@dol.gov

*COUNSEL FOR PLAINTIFF*
*R. ALEXANDER ACOSTA, SECRETARY*
*OF LABOR, UNITED STATES*
*DEPARTMENT OF LABOR*

*s/ Lars C. Golumbic*
Lars C. Golumbic